OPINION OF THE COURT
Meyer, J.
An arrest is invalid when the arresting officer acts upon information in criminal justice system records which, though correct when put into the records, no longer applies and which, through fault of the system, has been retained in its records after it became inapplicable. Accordingly, an arrest made in reliance upon the computerized criminal record file of defendant, which showed as outstanding a parole violation warrant which had in fact been executed nine months before and vacated four months before the arrest, is made without probable cause. The order of the Appellate Division affirming the County Court Judge’s denial of suppression of evidence obtained as a result of defendant’s arrest should, therefore, be reversed.
Defendant was suspected of committing a series of burglaries in Málveme, Long Island, in August, 1978. A flyer alerting Hempstead, Málveme and Lynbrook Police Departments about defendant’s identity, the make and model of his car, and his suspected activities was circulated by Nassau police in early September, 1978. On September 11, 1978, Officer Raymond Enright of the Hempstead Police Department spotted defendant while cruising on Belmont Parkway. He followed defendant’s car for several blocks during which defendant drove through a stop sign and twice failed to signal before making a turn. Enright pulled defendant over for these traffic violations and while writing up the tickets gave defendant’s name, date of birth, race and sex to Hempstead Police Headquarters for a warrant check, in accordance with standard procedure.
*521 From Hempstead headquarters Officer Kenneth Bergman forwarded the identifying information by teletype to the National Crime Information Center maintained by the Federal Bureau of Investigation in Maryland[1] and to the New York State Identification and Intelligence System.[2] Within two or three minutes he received a teletype response of a “hit”, an active violation warrant issued in November, 1977 by the New York State Division of Parole, which had been reported to both NYSIIS and NCIC. In fact, the warrant had been executed in January, 1978 and NYSIIS had been notified soon thereafter by the filing of a clearance form that the warrant was no longer outstanding. Moreover, after a hearing held June 21, 1978, the parole violation warrant had been vacated by Supreme Court order.
Based upon the teletype he received, Officer Bergman advised Enright of the existence of the warrant and then sought by teletype to check with the Division of Parole on its status. No response to that inquiry was ever received, but, Officer Bergman testified, response to such an inquiry being a manual rather than a computer operation, a lapse of 6 to 24 hours in receiving a response would be normal.
Enright, informed that there was an open warrant for defendant, immediately arrested him. Search of defendant’s person incident to the arrest produced a quantity of jewelry which had been stolen from two households in Hempstead earlier that evening. Search of the trunk of defendant’s car uncovered television sets, stereo and other equipment also taken from these households. In addition, defendant’s palmprint, obtained in the arrest processing, was found to match a print lifted from a fishbowl at a North Valley Stream residence that had been burglarized in August, 1978, a crime which defendant subsequently admitted.
*522 Indicted for the Hempstead and North Valley Stream burglaries, defendant moved on Fourth Amendment grounds to suppress the physical evidence, his palmprint and his statement. The motion was denied and defendant was convicted after trial. The Appellate Division unanimously affirmed the judgment of conviction. There should be a reversal. We agree with the decision of the Appellate Division, Third Department, in People v Lemmons (49 AD2d 639, affd without reaching the issue 40 NY2d 505) which is contrary to the decision below.
The question presented is extremely narrow. Defendant does not contest the validity of the vehicle stop (see People v Ingle, 36 NY2d 413). He challenges, instead, the validity of his subsequent arrest as a parole violator. Nor can it be controverted that if defendant’s arrest was invalid, the items taken from his person and from the vehicle trunk, as well as his palmprint and his statement, must all be suppressed as poisoned fruits of that unlawful arrest (see Wong Sun v United States, 371 US 471).[3] Because we agree that the arrest was invalid, it is unnecessary for us to reach any of the other grounds for suppression urged by defendant.
Whiteley v Warden (401 US 560) definitively established what has been referred to as the “fellow officer” rule (see United States v Ventresca, 380 US 102, 111; 1 La Fave, Search and Seizure, §3.5, subd [b], p 623): in making an arrest a police officer may rely upon information communicated to him by another police officer as, for example, that an individual is the subject named in a warrant and should be taken into custody in execution of the warrant. However, if, in the example given, the warrant turns out to be invalid, any evidence seized as a result of the arrest will be suppressed notwithstanding the reasonableness of the arresting officer’s reliance upon the communication (Whiteley v Warden, 401 US 560, 568, supra). The People ask us to distinguish between an arrest on a warrant apparently valid but later adjudicated to have been invalidly issued and an arrest on a warrant validly issued but vacated prior *523 to the arrest made on the basis of it. Although there is a factual difference between these two situations, they are the same in critical part. In each case, police intrude upon protected Fourth Amendment interests under the purported authority of a warrant which is subsequently revealed to have furnished, at the time of the intrusion, no justification for such police conduct.
Finally, we expressly reject the People’s contention that Officer Enright’s “good faith” reliance upon the parole warrant “hit” renders, the exclusionary rule inapplicable. An assessment of probable cause turns on what was reasonably and objectively in the mind of law enforcement authorities. It does not turn on such subjective considerations as the absence of malice against a suspect, the lack of intent to violate constitutional rights (People v Adams, 53 NY2d 1, 9; Hill v California, 401 US 797, 804) or any other variation of what has been referred to in another context as the “white heart and empty head” standard (White & Summers, Uniform Commercial Code [2d ed], p 218). The good faith of the enforcement authorities cannot validate an arrest based upon a warrant which had been vacated four months before and had been executed nine months before the arrest was made.
The order of the Appellate Division should be reversed, the judgments of conviction vacated, the motion to suppress granted, and the matter remitted to the trial court for further proceedings on the indictments.
Chief Judge Cooke and Judges Jasen, Gabrielli, Jones, Wachtler and Fuchsberg concur.
Order reversed, judgments of conviction vacated, defendant’s motion to suppress granted and case remitted to Nassau County Court for further proceedings on the indictments.

. The statutory predicate for NCIC is section 534 of title 28 of the United States Code. As to its history see United States v Mackey (387 F Supp 1121,1123); Rentschler, Garbage In, Gospel Out: Establishing Probable Cause Through Computerized Criminal Information Transmittals (28 Hastings LJ 509); Doernberg & Zeigler, Due Process Versus Data Processing: An Analysis of Computerized Criminal History Information Systems (55 NYU L Rev 1110, 1119).

. The statutory predicate for NYSIIS is subdivision 6 of section 837 of the Executive Law.

. The People argue inevitable discovery through an inventory search, but that overlooks Officer Enright’s concession that until he learned of the warrant he was not going to arrest defendant, who had been given tickets for the traffic violations.