OPINION OF THE COURT
Joseph Harris, J.
the facts
The City of Albany is not a small community, but its police know many people therein.
On September 4, 1984, at about 9:00 p.m., Detective Kenneth Sutton, a narcotic officer with the Albany Police Department, observed an automobile operated by one known to him as William Nuness. Detective Sutton also knew there recently had been a warrant issued for the arrest of Mr. Nuness on an assault charge, and believing the warrant still outstanding, stopped the Nuness vehicle for the purpose of executing the warrant.
The defendant, Miller, was a passenger in the Nuness vehicle. He too was known to Sutton but was in no way wanted by him at that time. However, when Sutton looked through the window of the stopped vehicle, he saw in plain view on a chain around Miller’s neck two high school class rings, and in plain view on the front floor of the vehicle in the vicinity of Mr. Miller a two-inch plastic straw which his long experience as a narcotic officer told him was a "coke straw” used for snorting cocaine. With respect to the class rings *526 around the neck of defendant Miller, Sutton knew that Miller was not a high school graduate and his suspicion was aroused as to the legitimacy of Miller’s possession of said rings. He inspected the rings and the "straw” and found on each ring a set of initials that did not conform to those of David Miller; on the straw he found the residue of a white powder that, again from his experience as a narcotic officer, he reasonably believed to be cocaine.
Both Nuness and Miller were arrested — Nuness on the warrant and Miller for possession of cocaine. The rings, believed to constitute stolen property, were seized for further investigation. Further investigation ascertained that the rings had indeed been stolen and Miller was subsequently charged also with possession of stolen property.
On the way downtown to detective headquarters with Nuness and Miller, Sutton stopped at the Arbor Hill Neighborhood Police Unit and discovered that the warrant against Nuness had been executed a day or two before, a fact that had not previously been imparted to the police by Nuness.
All charges were dropped against Nuness. The question facing the court is: "Where does all this leave Miller?”
THE LAW
An arrest is the ultimate intrusion. For most intents and purposes it marks the end of the investigatory phase of police activity and the commencement of the accusatory stage.
As the ultimate intrusion, an arrest, whether upon warrant or without warrant, can be made only upon probable cause. And probable cause either exists or it doesn’t exist. Not all the good faith in the world on the part of the arresting officer can create probable cause when probable cause does not exist. Thus, in People v Jennings (54 NY2d 518) the Court of Appeals held invalid an arrest and suppressed incriminatory property seized as an incident to that arrest, where the arrest was made in reliance upon the computerized criminal record file of a defendant which showed as outstanding a parole violation warrant which had in fact been executed nine months before, and vacated four months before the arrest, the arrest being held to have been made without probable cause. The Court of Appeals stated that "good faith” was irrelevant to such an arrest. And in People v Lent (92 AD2d 941), the Appellate Division, Second Department, held invalid, as being made without probable cause, an arrest made in reliance upon *527 a teletype from a fellow officer which showed as outstanding an arrest warrant which had in fact been vacated approximately eight hours before the arrest. (See also, People v Lemmons, 49 AD2d 639 [3d Dept]; People v Watson, 100 AD2d 452 [2d Dept].)
Where, again, does all this leave Mr. Miller? Defendant Miller was arrested not on an invalid warrant but upon probable cause founded on "plain view” observations of the police officer made upon the stop of the vehicle in which Miller was a passenger. The basis of the stop was an invalid warrant sought to be executed against the driver of the vehicle, Nuness, not Miller; the police never even had Miller in mind — he just happened to be there.
The disposition of the suppression motion depends upon the validity of the stop of the automobile vis-á-vis Miller. First of all he has no standing to declare himself the beneficiary of a deprivation of the constitutional rights of another. It is well settled that 4th Amendment rights are personal and may not be vicariously asserted. (United States v Salvucci, 448 US 83, 84; Rakas v Illinois, 439 US 128, 135-138; People v Ponder, 54 NY2d 160.)
Secondly, even as to Nuness the stop itself was valid, even though the subsequent arrest was invalid. The stop itself was not an arrest and was authorized as a temporary detention by CPL 140.50 (1), which recites: "In addition to the authority provided by this article for making an arrest without a warrant, a police officer may stop a person in a public place * * * when he reasonably suspects that such person * * * has committed * * * either (a) a felony or (b) a misdemeanor”. The stop was valid within the framework of police authority set forth in People v La Pene (40 NY2d 210, 223) and under the ruling of the United States Supreme Court in Terry v Ohio (392 US 1) authorizing temporary detention in public places upon articulable and reasonable suspicion less than probable cause. (See also, People v Ingle, 36 NY2d 413; People v Howell, 111 AD2d 768.)
Whereas an arrest is the ultimate intrusion and commences the accusatory phase of the criminal justice system, the stop of the vehicle was itself less than an ultimate intrusion and still a part of the investigatory phase of the criminal justice system. And in this prearrest stage the good faith of the police officer is indeed relevant, even if irrelevant with respect to the subsequent arrest itself.
*528 Surely a police officer, armed with knowledge of the recent issuance of a warrant for the arrest of the occupant of an automobile — even though, unbeknownst to the police officer, the warrant either had already been executed or vacated — has the right at least — indeed, the duty — to stop that automobile and check on the status of that warrant! It would be an irresponsible state of affairs for a police officer, happening upon someone against whom, known to him, a warrant for a major felony had recently been issued, not to in good faith stop the individual until he could ascertain whether or not the warrant was still valid. It would be no less irresponsible in a minor case. In any event the intrusion would be minimal. Nor does Jennings (supra) and its line of cases prohibit this.
What Jennings (supra) does prohibit is, once the temporary detention occurs, to extend this temporary detention into a full-blown arrest if the warrant has already been previously executed, vacated or is otherwise invalid. Before extending the temporary detention into an arrest the police must ascertain the current viability of the warrant, and the arrest is made at their peril. If the warrant is not currently viable, the arrest is invalid and any action dependent on the validity of the arrest —as for example, property seized pursuant to a search incident to the arrest — is likewise invalid.
But a seizure based upon "plain view” observations, where the police are lawfully at the place where the observations are made, as in this case, is not dependent for its validity upon the subsequent arrest. Probably not even as against the subject of the invalid warrant, and in this case certainly not as against the third-party stranger, Miller. (See, Coolidge v New Hampshire, 403 US 443; People v Lemmons, 49 AD2d 639, supra.)
Accordingly, for the reasons stated above, the motion of defendant Miller to suppress the tangible property seized — to wit, the rings and coke straw — is denied.