*856 OPINION OF THE COURT
Albert Tomei, J.
Defendants are charged with criminal possession of a weapon in the third degree. They moved by way of an omnibus motion to suppress a gun recovered from the van which defendant Vasquez was driving and defendants Ruiz and Orengo were occupying as passengers. A Mapp/Dunaway hearing was conducted on January 16, 1987. Inasmuch as defendants Vasquez and Orengo failed to appear at the hearing and their attorneys declined to participate on their behalf in their absence, only defendant Ruiz’ motion is decided herein.
The witnesses at the hearing were Police Officers Edward Scolavino and Timothy Guditis for the People. Based on their testimony and documentary evidence admitted at the hearing, the court makes the following findings of fact and conclusions of law.
FINDINGS OF FACT
On October 28, 1985, at approximately 10:00 p.m., Police Officers Scolavino and Guditis and Lieutenant Farbman were in plain clothes on motor patrol in an unmarked police car moving north on Throop Avenue in the Borough of Brooklyn. On Throop Avenue at DeKalb they observed a van occupied by a male driver and two male passengers traveling west on DeKalb Avenue. Affixed to the rear of the van was a cardboard license plate. With the unmarked police car following, the van made a right turn on Throop Avenue, proceeded north, made a second right and a third right, arriving back at DeKalb Avenue.
At this time Police Officer Scolavino transmitted the license number of the van over the car radio to ascertain if the van was reported stolen. The oral response was a "1016”, signifying that the van had been reported stolen. The officers pulled the van over and, without making any inquiry of the driver or passengers, arrested the three occupants for possession of a stolen vehicle. The two passengers, defendants Ruiz and Orengo, were directed to remain in the van; defendant Vasquez, the driver, was ordered out. As Vasquez exited the vehicle, Police Officer Scolavino observed a dagger hanging from his belt.
The officers radioed for backup assistance. When the backup unit arrived, the three defendants were transported to the *857 79th Precinct. Officer Scolavino drove the van back to the precinct. At the precinct Police Officer Guditis searched the van for the VIN to do a further sprint check to verify the "1016” report. As he leaned into the van he observed a shiny silver gun in an area of the dashboard from which the radio had been removed. The gun and the van were vouchered.
Having discovered the weapon in the van, Police Officer Scolavino processed the arrest of the three individuals at the precinct based on seizure of the weapon.
While the defendants were being processed at the precinct, a further sprint check disclosed that the license plate affixed to the van and not the van itself that had been reported stolen. The "1016” report of a stolen vehicle was incorrect.
DETERMINATIONS OF LAW
On a Mapp hearing, the People have the burden of going forward to show the legality of police conduct. Defendant bears the ultimate burden of proving by a preponderance of the evidence that the search was illegal.
The facts surrounding the arrest of defendants and search of the van are not in dispute. The only issue to be decided on this hearing is a legal one, whether a radio-generated report that an automobile is stolen, which the People concede is incorrect, can generate probable cause to support the search of an automobile and arrest of its occupants.
A careful review of the pertinent case law leads the court to the inescapable conclusion that it cannot.
The leading case on this point is People v Jennings (54 NY2d 518). In Jennings, police arrested defendant on the strength of a teletype response from NCIC and NYSIIS indicating that defendant was the subject of an active violation warrant issued by the New York State Division of Parole. The parole warrant was in fact no longer outstanding.
A search of defendant’s person and automobile produced the fruits of an earlier burglary; his palm print matched a print taken from a second burglarized residence. The trial court denied defendant’s motion to suppress. Reversing the Appellate Division’s affirmance of defendant’s conviction, the Court of Appeals said (at 522): "[I]n making an arrest a police officer may rely upon information communicated to him by another police officer as, for example, that an individual is tbe subject named in a warrant and should be taken into custody in execution of the warrant. However, if * * * the warrant turns *858 out to be invalid, any evidence seized as a result of the arrest will be suppressed notwithstanding the reasonableness of the arresting officer’s reliance upon the communication”.
The Jennings holding (supra) was applied by the Second Department in People v Lent (92 AD2d 941 [1983]) and People v Watson (100 AD2d 452 [1984]) to suppress the fruits of an unlawful arrest. In People v Lent, defendant’s arrest was predicated on a warrant which had been vacated eight hours earlier. In People v Watson, defendant was taken into custody based on a wanted card which the police later learned had been canceled.
Although in the case at bar an invalid stolen vehicle report is at issue, no meaningful distinction can be made between the report and the invalid arrest warrant which was before the Jennings court. The principle underlying the Court of Appeals holding, that an intrusion on 4th Amendment rights based on information which is incorrect at the time of the intrusion is unsupportable, is rooted in simple logic which reaches beyond the facts of Jennings.
The People urge the court to validate the arrest notwithstanding the incorrect stolen vehicle report on the theory that a "1016” alarm has a dual meaning which encompasses both a stolen vehicle report and a stolen license plate report. The "1016” alarm received by Officers Scolavino and Guditis, they argue, could have indicated a stolen plate which matched the tag on the van occupied by defendant Ruiz, and, therefore, provided probable cause for the arrest.
The court rejects the People’s argument. For purposes of 4th Amendment analysis, police action must be justified by the knowledge possessed by the police officers at the moment of the intrusion. Subsequently acquired information cannot legitimize otherwise defective police conduct (People v De Bour, 40 NY2d 210, 216). Although Police Officer Scolavino testified on cross-examination that a "1016” report means "at least a stolen license plate”, nowhere else in the record is there evidence that the van was stopped because it carried stolen plates.* Rather, overwhelming proof was adduced at the hearing that the only reason for stopping the van, arresting defendants and searching the van was the report of a stolen vehicle.
*859 The notations made by Police Officer Scolavino in his memorandum book state the reason for the arrest as possession of a stolen vehicle. In addition, the driver and the occupants of the van were taken into custody. Had the motivation for the stop been possession of stolen number plates, the driver alone would have been subject to arrest for violation of Vehicle and Traffic Law § 403 or Penal Law § 165.40, both class A misdemeanors. Elsewhere in their testimony the officers repeatedly characterized the "1016” as a report of a stolen vehicle and also asserted several times that the defendants were arrested for possession of a stolen vehicle. Finally, the officers testified that they did not become aware of the stolen plate report until they returned to the precinct to process the arrests for criminal possession of a weapon.
This record suggests that the officers’ testimony regarding the dual significance of the "1016” alarm was formulated for the purpose of bolstering the People’s position on the hearing. Accordingly, it should not be credited. Were the court to adopt the theory which the People advance, it would be sanctioning a sham to justify the ensuing arrest and search. In accord with this result is Matter of Robert M. (99 Misc 2d 462 [Fam Ct, NY County 1979]). On facts similar to those before this court, the Family Court refused to validate a search as incident to an arrest on a marihuana possession charge, a ground which was available to the officer at the time of the arrest but which the officer ignored. This court agrees with the reasoning put forth by the Family Court.
Accordingly, this court finds that the arrest of defendant Ruiz was without probable cause. Having so determined, the court is compelled to conclude that the impoundment and search of the van were not justified, and further that the evidence seized during the search will not be admissible at trial of the indictment (Wong Sun v United States, 371 US 471).

 The van could have been stopped for violation of Vehicle and Traffic Law § 402 which requires that number plates be "of such material, form, design and dimensions * * * as the commissioner shall prescribe”. The People made no argument respecting this point.