UNITED STATES of America,
Appellee,

v.

Anthony SANTA, Defendant–Appellant.

No. 98–1566.

United States Court of Appeals,
Second Circuit.

Argued April 9, 1999.

Decided June 2, 1999.

**22**

Colleen P. Cassidy, The Legal Aid Society, Federal Defender Division, Appeals Bureau, New York, NY, for defendant-appellant.

William M. Schrier, Assistant United States Attorney, New York, NY (Mary Jo White, United States Attorney for the Southern District of New York, Cathy Seibel, Assistant United States Attorney, New York, NY, on the brief), for appellee.

Before: WINTER, Chief Judge, NEWMAN and SOTOMAYOR, Circuit Judges.

SOTOMAYOR, Circuit Judge:

Defendant-appellant Anthony Santa appeals from a judgment of the United States District Court for the Southern District of New York (Parker, *J.*) convicting him, following a bench trial, of violating 21 U.S.C. §§ 812, 841(a)(1) and 841(b)(1)(C) by possessing crack cocaine with intent to distribute. In April 1997, officers of the Spring Valley Police Department arrested Santa and seized from his possession several dozen plastic bags containing crack cocaine. The officers made this arrest based on a police computer record, which indicated that Santa was wanted on an outstanding warrant. Unbeknownst to the arresting officers, however, the warrant had been vacated seventeen months earlier, but remained in the statewide police computer network because court employees failed to notify the proper law enforcement agency to remove it.

Prior to trial, Santa moved to suppress the drug evidence, arguing that it was the product of an unlawful arrest on an invalid warrant. The district court denied Santa's motion on the basis of the Supreme Court's decision in *Arizona v. Evans,* 514 U.S. 1, 115 S.Ct. 1185, 131 L.Ed.2d 34 (1995), which established an exception to the exclusionary rule where law enforcement officers rely on police records that contain erroneous information resulting from clerical errors of court employees. Santa contends on appeal that the *Evans* exception does not apply under the circumstances of this case. We disagree and affirm the judgment of the district court.

## BACKGROUND

### I. *The Arrest Warrant*

Spring Valley, New York is a village located entirely within the Town of Ramapo. The Spring Valley Police Department and the Ramapo Police Department are both authorized to make arrests in Spring Valley. The two departments are, however, separate agencies that operate independently of one another. The Spring Valley Village Court ("Village Court") has jurisdiction over cases arising in Spring Valley.

On August 13, 1995, Ramapo Town Police Officer John Lynch arrested Santa in Spring Valley in connection with an alleged theft and assault that occurred in Ramapo. Police subsequently searched a vehicle involved in the crime and recovered a jacket containing eight vials of a white powder that field-tested positive for cocaine. Officer Lynch transported Santa to the Ramapo Police Department and prepared a criminal complaint charging Santa with petty larceny, assault, criminal impersonation and criminal possession of a controlled substance. These charges were filed on the same day in the local criminal court in Ramapo. On October 5, 1995, however, at the direction of the Assistant District Attorney for Rockland County, Officer Lynch refiled the criminal impersonation and criminal possession charges in the Spring Valley Village Court.

On October 23, 1995, the Village Court, for reasons not apparent from the record,

issued a warrant directing the Ramapo Police Department to arrest Santa on the criminal impersonation and possession charges.[1] Three days later, the Ramapo Town Police, as the complaining law enforcement agency with respect to these charges, entered the warrant in the New York State Police Information Network ("NYSPIN"), a statewide computer database that contains outstanding warrants and other information relevant to law enforcement. Two weeks later, on November 8, 1995, the Village Court issued a request to vacate the warrant. The Village Court, however, misdirected the request to the Spring Valley rather than the Ramapo Police Department.

Typically, when the Spring Valley Police Department receives a request to vacate a warrant, the desk officer or dispatcher on duty first determines whether the Spring Valley Police Department is the complaining agency. If it is, the desk officer or dispatcher promptly removes the warrant from NYSPIN and then forwards the vacatur request to the records officers, who delete the warrant from the internal stationhouse computer. The internal computer contains only those warrants that belong to the Spring Valley Police Department, *i.e.*, warrants as to which the Spring Valley Police Department is the complaining agency.

Once every few months, as in this case, the Spring Valley Police Department mistakenly receives a request to vacate a warrant belonging to another police department. Only the complaining law enforcement agency that initially enters a warrant in NYSPIN is authorized to remove it.[2] Thus, when the Spring Valley Police Department receives a misdirected vacatur request:

1. The record does not establish whether Santa was still in police custody in Ramapo when the warrant was issued.

2. According to Officer Dennis Healy, the Spring Valley Police Department's computer administrator and NYSPIN training officer, when a complaining law enforcement agency

[i]t is [the] Department's practice to return the request to the Village Court where it can be directed to the complaining party. [The Department] sometimes also send[s] or fax[es] a copy directly to the complaining party as a courtesy.

The Village Court and the Spring Valley Police Department are located across the hall from each other in the same building, and warrants and warrant vacatur requests are typically hand-delivered.

The record contains no direct evidence of whether the Spring Valley Police Department followed its practice in this case. The record is clear, however, that the Village Court never sent its request to vacate Santa's warrant to the Ramapo Police Department. In April 1996, the Ramapo Town Police, unaware that the Village Court had vacated the warrant, lodged the warrant at the Otisville Correctional Facility ("Otisville"), where Santa was incarcerated for an unrelated parole violation. On April 10, 1996, Santa wrote to the Ramapo Justice Court seeking a "final disposition" of the criminal impersonation and possession charges that had been filed in connection with his August 8, 1995 arrest. The Ramapo Justice Court made a notation on Santa's letter that the charges had been dismissed, and returned the letter to Santa at Otisville. Otisville then contacted Maylin Ward, Senior Clerk of the Court, who confirmed that the case against Santa had been dismissed on November 8, 1995. On April 18, 1996, Otisville returned the warrant to the Village Court along with a letter noting that the case had been dismissed. The Village Court apparently took no further action with respect to the warrant.

enters an arrest warrant in NYSPIN, the warrant is entered in the warrant entry screen, which requires that agency's Originating Identifier ("ORI"). Only the complaining agency with the correct ORI can later vacate the warrant in NYSPIN by completing the cancellation screen.

## II. *The Arrest*

On April 9, 1997, after Santa was released from Otisville, Spring Valley Police Officer Jorge Marciano observed Santa at the Spring Valley bus station, a "known ... drug trafficking location." Officer Marciano recognized Santa, but did not know his name. Marciano was aware, however, that Santa had been the subject of previous criminal investigations. Marciano approached another officer on the scene, Officer Gibson, who knew Santa by name. Gibson radioed the dispatcher at the Spring Valley Police Station and requested a "wanted person check" on Santa. The dispatcher checked NYSPIN and learned that Santa was wanted by the Ramapo Town Police on an outstanding arrest warrant. The dispatcher then contacted the Ramapo Police Department, which verified that according to its records, the warrant was still active. The Ramapo Police Department also faxed a copy of the warrant to the Spring Valley Police Department. The dispatcher radioed this information back to Officers Marciano and Gibson at the bus station.

Officer Marciano later observed Santa leaving the bus station in a taxi. Marciano stopped the taxi and arrested Santa on the purportedly outstanding warrant. Incident to Santa's arrest, the officers searched Santa and seized approximately fifty clear plastic bags, approximately thirty of which contained a white, "chunky" substance that appeared and was later confirmed to be crack cocaine. The officers then took Santa to the Spring Valley Police Station to process his arrest. After he was arrested and the drug evidence seized, Santa informed the officers that his arrest warrant had been vacated, but the court was closed and the officers were unable to verify the status of the warrant.

## III. *The District Court Proceedings*

Santa was indicted on September 18, 1997, in federal court on one count of possessing approximately 2.95 grams of crack cocaine with intent to distribute, in violation of 21 U.S.C. §§ 812, 841(a)(1) and 814(b)(1)(C). Prior to trial, Santa moved to suppress the drug evidence and dismiss the indictment. Santa claimed that the arrest and search violated his rights under the Fourth Amendment to the United States Constitution because the warrant that provided the basis for the arrest had been vacated seventeen months earlier. Santa argued that the evidence seized incident to his arrest should therefore be suppressed as "fruit of the poisonous tree." In response, the government argued that even though the warrant had been vacated, the arresting officers acted in objectively reasonable reliance on the NYSPIN record. Because court employees were responsible for the failure to remove Santa's warrant from NYSPIN, the government contended, suppression was unwarranted under *Evans*, 514 U.S. at 14–16, 115 S.Ct. 1185, in which the Supreme Court announced an exception to the exclusionary rule where police officers act in objectively reasonable reliance on erroneous police records resulting from "clerical errors of court employees."

The district court referred Santa's motion to Magistrate Judge George A. Yanthis, who held an evidentiary hearing on December 17, 1997, at which Officers Marciano and Lynch testified. Officer Marciano testified that at the time of Santa's arrest, he was not aware that the warrant had been vacated, nor did the other arresting officers indicate in any manner that they believed the warrant had been vacated. In addition, Officers Marciano and Lynch both testified that they had never before arrested a suspect based on a warrant listed in NYSPIN, only to learn later that the warrant had been vacated.

On February 3, 1998, Magistrate Judge Yanthis filed a Report and Recommendation advising the district court to deny Santa's motion. The magistrate judge found "no indication that the arresting officers from the Spring Valley Police Department were not acting objectively reasonabl[y] in relying upon the erroneous

NYSPIN record." The magistrate judge further found that

> [w]henever requested to vacate warrants to which they are not the complaining agency, it is the policy of the Spring Valley Police Department to return the request to the [V]illage [C]ourt where it can be directed to the proper agency.... Although there was no direct evidence that such action was taken by the Spring Valley Police Department, the Court finds that said routine practice was followed and that the practice is a reasonable one. *See* Fed.R.Evid. 406. The Court finds that the Spring Valley Village Court failed to redirect the request to vacate the arrest warrant to the proper agency, the Ramapo Police Department.... As such, the erroneous computer record relied upon by the Spring Valley Police Department stems directly from the Spring Valley Village Court's failure to notify the Town of Ramapo Police Department that the warrant was vacated.

Based on his finding that the error that led to Santa's arrest on a vacated warrant "was made by court personnel, not law enforcement," Magistrate Judge Yanthis concluded that the drug evidence seized incident to the arrest was admissible under the reasoning of *Evans*, 514 U.S. at 14–16, 115 S.Ct. 1185.

On April 21, 1998, the district court adopted the magistrate judge's Report and Recommendation and denied Santa's motion, finding that

> [t]he errors that admittedly occurred in failing to properly vacate the original warrant were those of court personnel, and not of the police. While the fact that these errors occurred and were not corrected is quite troubling, this Court is bound by *Arizona v. Evans* ....

On May 27, 1998, after a one-day bench trial on stipulated facts, the district court convicted Santa of possessing crack cocaine with intent to distribute. The court sentenced Santa to a thirty-month prison term. This appeal followed.

## DISCUSSION

### I. *The Standard of Review*

 In reviewing a district court's denial of a motion to suppress evidence, we review the district court's factual findings for clear error and its legal conclusions *de novo*. *See United States v. Miller*, 148 F.3d 207, 213 (2d Cir.1998), *cert. denied*, —— U.S. ——, 119 S.Ct. 804, 142 L.Ed.2d 665 (1999). Although we must "view the evidence in the light most favorable to the government," *id.*, we are mindful that where, as here, the government asserts the good faith exception to the exclusionary rule, "[t]he burden is on the government to demonstrate the objective reasonableness of the officers' good faith reliance." *United States v. George*, 975 F.2d 72, 77 (2d Cir.1992). We review that legal question *de novo*. *Id.*

### II. *The* Evans *Exception to the Exclusionary Rule*

"The exclusionary rule generally prohibits admission at trial of evidence seized in searches deemed unreasonable under the Fourth Amendment, as well as of derivative evidence acquired as an indirect product or result of the unlawful search." *United States v. Eng*, 971 F.2d 854, 859 (2d Cir.1992) (citations omitted). The Supreme Court has, however, recognized a good faith exception to the exclusionary rule. In *United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), the Court held that evidence seized in objectively reasonable reliance on a search warrant that is subsequently declared invalid should not be excluded. *See also George*, 975 F.2d at 77.

The critical question in this case is whether the drug evidence seized from Santa was admissible under an extension of this good faith exception, as set forth in *Evans*, 514 U.S. at 14–16, 115 S.Ct. 1185. In *Evans*, the Court held that the good faith exception also applies to evidence seized in violation of the Fourth Amend-

ment by an officer acting in objectively reasonable reliance on an erroneous police record indicating the existence of an outstanding arrest warrant, so long as court employees were responsible for the error. *Id.* at 3–4, 16, 115 S.Ct. 1185. The police officer in *Evans* had run a computer check, which revealed that the defendant was wanted on an outstanding misdemeanor warrant. *Id.* at 4, 115 S.Ct. 1185. The officer arrested the defendant based on the computer record and, in the course of the arrest, discovered marijuana in his possession. *Id.* Court clerks subsequently discovered, however, that the arrest warrant identified in the computer record had been vacated seventeen days prior to the arrest. *Id.* The warrant was not removed from the police computer files because court employees failed to notify the sheriff's office that the warrant had been quashed. *Id.* at 5, 115 S.Ct. 1185. Once the court clerks discovered this error, they immediately corrected it and searched their files to ensure that no similar mistakes had occurred. *Id.* at 15, 115 S.Ct. 1185. This type of error occurred only once every three or four years. *Id.*

In determining whether the exclusionary rule applied under these circumstances, the Court noted initially that "[t]he exclusionary rule operates as a judicially created remedy designed to safeguard against future violations of Fourth Amendment rights through the rule's general deterrent effect." *Id.* at 10, 115 S.Ct. 1185. "[T]he rule's application has [thus] been restricted to those instances where its remedial objectives are thought most efficaciously served." *Id.* at 11, 115 S.Ct. 1185. "Where 'the exclusionary rule does not result in appreciable deterrence, then, clearly, its use . . . is unwarranted.'" *Id.* (quoting *United States v. Janis*, 428 U.S. 433, 454, 96 S.Ct. 3021, 49 L.Ed.2d 1046 (1976)) (alteration in original).

The Court then relied on three factors to support its conclusion that application of the exclusionary rule would not result in appreciable deterrence in the context of an erroneous computer record generated by court employees. First, the Court noted that "the exclusionary rule was historically designed as a means of deterring police misconduct, not mistakes by court employees." *Id.* at 14, 115 S.Ct. 1185. Second, the Court observed that the defendant "offer[ed] no evidence that court employees are inclined to ignore or subvert the Fourth Amendment or that lawlessness among these actors requires application of the extreme sanction of exclusion." *Id.* at 14–15, 115 S.Ct. 1185. The Court noted, in fact, that the type of error that led to the defendant's arrest in *Evans* occurred only once every three or four years and was corrected as soon as it was discovered. *Id.* at 15, 115 S.Ct. 1185. Third, and "most important[ly]," the Court found "no basis for believing that application of the exclusionary rule in these circumstances will have a significant effect on court employees responsible for informing the police that a warrant has been quashed." *Id.* This was because "court clerks are not adjuncts to the law enforcement team engaged in the often competitive enterprise of ferreting out crime." *Id.* Consequently, the Court explained, "they have no stake in the outcome of particular criminal prosecutions." *Id.* The Court went on to say:

> If it were indeed a court clerk who was responsible for the erroneous entry on the police computer, application of the exclusionary rule also could not be expected to alter the behavior of the arresting officer. . . . There is no indication that the arresting officer was not acting objectively reasonably when he relied upon the police computer record.

*Id.* at 15–16, 115 S.Ct. 1185.

In light of these considerations, the Court concluded that "[i]f court employees were responsible for the erroneous computer record, the exclusion of evidence at trial would not sufficiently deter future errors so as to warrant such a severe sanction." *Id.* at 14, 115 S.Ct. 1185. Accordingly, the Court established a "categorical exception to the exclusionary rule

for clerical errors of court employees." *Id.* at 16, 115 S.Ct. 1185. The Court specifically declined to address whether the same analysis would apply if police personnel were responsible for the error. *Id.* at 16 n. 5, 115 S.Ct. 1185. In a separate concurrence, however, Justice O'Connor, joined by Justices Souter and Breyer, emphasized that even if "the police were innocent of the court employee's mistake, they may or may not have acted reasonably in their reliance *on the recordkeeping system itself.*" *Id.* at 16–17, 115 S.Ct. 1185 (O'Connor, *J.*, concurring).

> Surely it would *not* be reasonable for the police to rely, say, on a recordkeeping system, their own or some other agency's, that has no mechanism to ensure its accuracy over time and that routinely leads to false arrests, even years after the probable cause for any such arrest has ceased to exist (if it ever existed).

*Id.* at 17, 115 S.Ct. 1185 (O'Connor, *J.*, concurring).

With these principles in mind, we turn to the circumstances surrounding Santa's arrest and consider, first, whether the arresting officers' reliance on the erroneous NYSPIN record was objectively reasonable, and, second, whether court employees were responsible for the failure to remove Santa's warrant from NYSPIN.

**A.** *The Arresting Officers' Reliance on the NYSPIN Record*

■ As a threshold matter, we conclude that the arresting officers' reliance on the NYSPIN record to arrest Santa was objectively reasonable. *See Evans,* 514 U.S. at 15–16, 115 S.Ct. 1185; *see also Leon,* 468 U.S. at 922, 104 S.Ct. 3405. At the time of Santa's arrest, the arresting officers did not know, and had no reason to know, that the warrant had been vacated. The NYSPIN record listed the warrant as outstanding. In addition, when the dispatcher contacted the Ramapo Police Department to verify that the warrant was still active, that agency not only confirmed that the

warrant was outstanding, but also faxed a copy to the Spring Valley Police Department. *Cf. United States v. Towne,* 870 F.2d 880, 884 (2d Cir.1989) (holding that police officer had probable cause to arrest defendant, even though defendant's probation and parole officer told police officer that she suspected charges had been resolved, where officer ran computer background check revealing outstanding fugitive warrant, personally contacted sheriff's office to confirm that warrant was outstanding, and requested and received copy of warrant before arresting defendant). Moreover, as far as the record discloses, the officers had no reason to doubt the accuracy of the NYSPIN system generally. *See Evans,* 514 U.S. at 17, 115 S.Ct. 1185 (O'Connor, *J.,* concurring) (noting that officers must have "acted reasonably in their reliance on the recordkeeping system itself") (emphasis omitted). Officers Marciano and Lynch both testified that they had never before arrested a suspect based on a computer record that later proved erroneous.

■ Santa argues that even if the arresting officers did not have actual notice that the warrant had been vacated, they had constructive notice of the vacatur based on the Spring Valley Police Department's receipt of the Village Court's misdirected vacatur request seventeen months earlier. In support of this argument, Santa relies principally on the Supreme Court's statement in *Whiteley v. Warden, Wyo. State Penitentiary,* 401 U.S. 560, 568, 91 S.Ct. 1031, 28 L.Ed.2d 306 (1971), that "an otherwise illegal arrest cannot be insulated from challenge by the decision of the instigating officer to rely on fellow officers to make the arrest." *See also Leon,* 468 U.S. at 923 n. 24, 104 S.Ct. 3405 ("Nothing in our opinion suggests ... that an officer could obtain a warrant on the basis of a 'bare bones' affidavit and then rely on colleagues who are ignorant of the circumstances under which the warrant was obtained to conduct the search.") (cit-

ing *Whiteley,* 401 U.S. at 568, 91 S.Ct. 1031).

This language in *Whiteley,* however, refers to the imputation of knowledge from one police officer to another officer who is working on the same case. *See also Illinois v. Andreas,* 463 U.S. 765, 771 n. 5, 103 S.Ct. 3319, 77 L.Ed.2d 1003 (1983) ("[W]here law enforcement authorities are cooperating in an investigation, ... the knowledge of one is presumed shared by all.") (citing *Whiteley,* 401 U.S. at 568, 91 S.Ct. 1031); *United States v. Cruz,* 834 F.2d 47, 51 (2d Cir.1987) ("The determination of whether probable cause to arrest exists can be based on the collective knowledge of all of the officers involved in the surveillance efforts because the various law enforcement officers in this investigation were in communication with each other."). *Whiteley* and its progeny do not support Santa's far broader proposition that all information received by a police department—including correspondence received in error—must be imputed to every officer in the department.[3]

Indeed, we have specifically rejected such a rule in the analogous context of mistaken arrest. In *United States v. Valez,* 796 F.2d 24 (2d Cir.1986), we observed:

> The rule that permits courts to assess probable cause to arrest by looking at the collective knowledge of the police force—instead of simply looking at the knowledge of the arresting officer—should not affect the law of mistaken arrest. The rule exists because, in light of the complexity of modern police work, the arresting officer cannot always be aware of every aspect of an investigation; sometimes his authority to arrest a suspect is based on facts known only to his superiors or associates. This rationale does not support [the] view that facts known to some members of the police force which exonerate an arrestee are *ipso facto* imputed to the arresting officer. Rather, the issue is whether the failure to communicate these facts to the arresting officer rendered the mistaken arrest unreasonable.

*Id.* at 28 (citation omitted). Similarly here, the knowledge of the Spring Valley Police Department clerk or desk officer who received the misdirected request to vacate Santa's warrant should not *ipso facto* be imputed to the arresting officers.[4]

We cannot say, moreover, that the Spring Valley Police Department's failure to communicate this information, either to the Ramapo Police Department or to the arresting officers, was unreasonable under the circumstances. Unless the Spring Valley Police Department is the complaining agency on a warrant, it is unable to re-

---

**3.** In any event, we would hesitate to rely on *Whiteley* to determine whether the good faith exception applies in this case. "Although *Whiteley* clearly retains relevance in determining whether police officers have violated the Fourth Amendment, its precedential value regarding application of the exclusionary rule is dubious." *Evans,* 514 U.S. at 13, 115 S.Ct. 1185 (citation omitted). Santa also cites *Kyles v. Whitley,* 514 U.S. 419, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995), for the proposition that law enforcement officers are charged with the knowledge of the agencies with which they work. *See id.* at 437, 115 S.Ct. 1555 ("[T]he individual prosecutor has a duty to learn of any favorable evidence known to the others acting on the government's behalf in the case, including the police."). *Kyles,* however, involved "[t]he prosecution's affirmative duty to disclose evidence favorable to a defendant." *Id.* at 432, 115 S.Ct. 1555 (citing *Brady v. Maryland,* 373 U.S. 83, 83

S.Ct. 1194, 10 L.Ed.2d 215 (1963)). No such duty is implicated here.

**4.** Likewise, we do not attribute the Spring Valley Police Department's notice of the vacatur of Santa's warrant to the Ramapo Police Department simply because the agencies have concurrent jurisdiction in Spring Valley. The record contains substantial evidence that the two agencies operate independently of one another. Officer Marciano testified, for example, that the Spring Valley Police Department does not discuss specific warrants with Ramapo officers. The Spring Valley Police Department "ha[s] no control over" a Ramapo warrant and "wouldn't even accept that warrant." Officer Lynch also testified that the two departments are "separate agencies." The two departments, moreover, are treated separately for purposes of NYSPIN.

move the warrant from NYSPIN. When the Spring Valley Police Department receives a request to vacate a warrant belonging to another police department, its practice is simply to return the request to the Village Court for redirection to the complaining agency. It is true that the Spring Valley Police Department could do more than just return misdirected notices to the court. The department could, for example, send or fax the warrant directly to the complaining agency, as it "sometimes" does "as a courtesy." The department could also enter the vacatur information in its own internal computer, which is typically consulted when the dispatcher conducts a wanted person check.

Even so, we conclude that the Spring Valley Police Department's practice of simply returning misdirected vacatur requests to the Village Court is not unreasonable as a matter of law. The Village Court is located across the hall from the police department in the same building. As a result, the department's practice does not create substantial delay in removing warrants from NYSPIN. In addition, the department's internal computer, as currently configured, contains only Spring Valley warrants. Most importantly, the department's practice has historically proved reliable. The department receives a misdirected vacatur request once every few months, yet Officer Marciano, in his six years as a patrolman, had never before arrested a suspect based on an erroneous computer record. Thus, it cannot be said that the Spring Valley Police Department's practice "routinely leads to false arrests." *Evans*, 514 U.S. at 17, 115 S.Ct. 1185 (O'Connor, *J.*, concurring).

B. *The Source of the Error*

■ Even if the arresting officers acted objectively reasonably in relying on the NYSPIN record, *Evans*'s categorical exception to the exclusionary rule applies only when police rely on erroneous computer records resulting from "clerical errors of court employees." *See id.* at 16,

115 S.Ct. 1185. Our next task is thus to locate the source of the error or errors that caused Santa's vacated warrant to remain in NYSPIN. Neither party disputes that the Village Court failed to notify the proper police department to remove the warrant from NYSPIN. Santa argues that the Spring Valley Police Department shared responsibility for this failure because it did nothing to correct the error. We disagree.

As we have said, the Spring Valley Police Department had a practice in place for dealing with misdirected vacatur requests, and that practice was reasonable. The magistrate judge specifically found, moreover, that the department returned the request to vacate Santa's warrant to the Village Court in accordance with its practice. Although Santa argues that this finding lacks an evidentiary basis, Rule 406 of the Federal Rules of Evidence explicitly states that "[e]vidence ... of the routine practice of an organization, whether corroborated or not and regardless of the presence of eyewitnesses, is relevant to prove that the conduct of the ... organization on a particular occasion was in conformity with the ... routine practice." The record establishes, moreover, that the Village Court never sent its request to vacate Santa's warrant to the Ramapo Police Department. The magistrate judge's finding that the Spring Valley Police Department adhered to its practice in this case is therefore "plausible in light of the record viewed in its entirety" and is not clearly erroneous. *See United States v. Reilly*, 76 F.3d 1271, 1276 (2d Cir.1996), *aff'd on reh'g*, 91 F.3d 331 (2d Cir.1996) (per curiam). Having concluded that the Spring Valley Police Department acted in accordance with its reasonable practice of returning misdirected vacatur requests to the Village Court, we agree with both the magistrate judge and the district court that the failure to remove Santa's warrant from NYSPIN is attributable to court employees rather than to police personnel.

■ Santa argues that even if court employees were responsible for this failure, the errors in this case extended far beyond the mere "clerical errors of court employees" addressed in *Evans*. In support of this contention, Santa notes that the Village Court not only sent its vacatur request to the wrong police department, but also failed to correct this error despite being notified by the Spring Valley Police Department and Otisville that the warrant remained in NYSPIN.

We, like the district court, are troubled by the Village Court's repeated errors in this case. The outcome in *Evans*, however, did not turn on the particular type or magnitude of the error, but on the identity of the individuals responsible for the error, *see, e.g.,* 514 U.S. at 14, 115 S.Ct. 1185 (noting that "the exclusionary rule was historically designed as a means of deterring police misconduct, not mistakes by court employees"), and on whether "[t]he threat of exclusion of evidence could ... be expected to deter such individuals" from committing these errors, *see id.* at 15, 115 S.Ct. 1185. *Evans* thus established a "*categorical* exception to the exclusionary rule for clerical errors *of court employees.*" *Id.* at 16, 115 S.Ct. 1185 (emphases added). Of course, the *Evans* exception, while categorical, is not absolute. As noted above, it would not apply if the arresting officers' reliance on the erroneous computer record was not objectively reasonable because the recordkeeping system itself was unreliable. *See id.* at 16–17, 115 S.Ct. 1185 (O'Connor, *J.,* concurring). Nevertheless, where, as here, "court employees were responsible for the erroneous computer record," and "[t]here is no indication [in the record] that the arresting officer[s] w[ere] not acting objectively reasonably when [they] relied upon the police computer record," *Evans* instructs that "the exclusion of evidence at trial would not sufficiently deter future errors so as to warrant such a severe sanction." *Id.* at 14–16, 115 S.Ct. 1185. We therefore affirm the district court's denial of Santa's motion to suppress.

## CONCLUSION

For the reasons set forth above, the judgment of the district court is affirmed.

JON O. NEWMAN, Circuit Judge, concurring in the Court's opinion:

The Court's opinion, which I reluctantly join, obscures what I consider the most troubling aspect of this case: this state-initiated prosecution has been brought in a federal court because it could not lawfully be brought in a state court. Police officers of a village in New York state seized narcotics incident to an arrest based on a warrant that had previously been vacated. New York law prohibits the use of such evidence. *See People v. Jennings,* 54 N.Y.2d 518, 446 N.Y.S.2d 229, 430 N.E.2d 1282 (1981) (fruits of arrest based on vacated warrant must be excluded, regardless of good faith of arresting officer). To circumvent this state law prohibition, federal authorities elected to use the limited prosecutorial and judicial resources of the federal government to charge and convict the defendant of possessing less than three grams of crack cocaine.

I agree with the Court that the Supreme Court's decision in *Arizona v. Evans,* 514 U.S. 1, 115 S.Ct. 1185, 131 L.Ed.2d 34 (1995), requires us to rule that, on the facts of this case, the use of the seized evidence does not violate the Fourth Amendment. But that case upheld a conviction that Arizona authorities, unimpeded by any state law restriction, chose to bring. It did not involve the use of federal law enforcement resources to circumvent a state's regulation of its own law enforcement personnel.

Nevertheless, the law is settled that federal standards govern the prosecution of federal cases in federal courts. *See Elkins v. United States,* 364 U.S. 206, 80 S.Ct. 1437, 4 L.Ed.2d 1669 (1960) (invalidating state officers' seizure that violated federal standards); *United States v. Pforzheimer,* 826 F.2d 200, 202–04 (2d Cir.1987) (upholding federal conviction obtained with evi-

dence seized by state officers in violation of state law but lawfully seized under federal law). And whatever authority we have to supervise the administration of criminal justice in the federal courts, *see Cupp v. Naughten,* 414 U.S. 141, 146, 94 S.Ct. 396, 38 L.Ed.2d 368 (1973); *Mesarosh v. United States,* 352 U.S. 1, 14, 77 S.Ct. 1, 1 L.Ed.2d 1 (1956), including discouraging prosecutorial misconduct, *see Donnelly v. DeChristoforo,* 416 U.S. 637, 648 n. 23, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974), does not extend to overseeing a federal prosecutor's decision lawfully to invoke federal jurisdiction for conduct that violates federal law.

Though powerless to disturb this conviction despite its unworthy motivation, we are not obliged to refrain from questioning the wisdom of using the federal forum to enable state officials to avoid state law restrictions. Federal law penalizes the possession of even small quantities of crack cocaine, but the conclusion is inescapable that the prosecution of this three-gram possession case, developed solely by local police officers, would have been left for state court prosecution were it not for the fact that state law arrest restrictions barred a state, but not a federal, prosecution. The dangers of using federal law enforcement resources to circumvent state law procedural requirements have recently been forcefully pointed out. *See* Task Force on the Federalization of Criminal Law, American Bar Association, *The Federalization of Criminal Law* 27–30, 43–45 (1998). Federal prosecutors who today secure one more conviction may in the future find a diminished reception for their plea in more substantial cases that their limited resources justify some relaxation of normally applicable procedural requirements. If sufficient federal manpower exists to help the Village of Spring Valley circumvent New York's restrictions on an arrest based on an invalid warrant in a three-gram possession case, it must be more abundant than I had thought.

I am obliged to concur. I am not required to approve.