Jason MARINIS, an infant over the age of fourteen (14) years, by his father and Natural Guardian, Nick T. Marinis and Nick Marinis, individually, Plaintiffs,

v.

VILLAGE OF IRVINGTON; Village of Irvington Police Department; Chief Denike; Sergeant Dennis Chillemi, and Dennis Chillemi, individually; Officer Andrew Bessinger, and Andrew Bessinger, individually; Officer James Egloff, and James Egloff, individually; Officer James Fox, and James Fox, individually; Officer Stephen Tilley, and Stephen Tilley, individually, Defendants.

No. 00 Civ.3113 GEL.

United States District Court, S.D. New York.

March 22, 2002.

---

*OPINION AND ORDER*

LYNCH, District Judge.

On April 7, 2000, plaintiff Jason Marinis was arrested by officers of the Irvington, New York, police department. Marinis and his father brought this action pursuant to 42 U.S.C. § 1983, alleging that the arresting officers lacked probable cause and used excessive force. On September 25, 2001, this Court (per then-District Judge Barrington D. Parker, Jr.) granted summary judgment for a number of defendants, but denied the motion as to defendant police officers Andrew Bessinger, John Fox, and Stephen Tilley, finding disputed issues of fact material to the excessive force claim, and holding that the officers were not entitled to qualified immunity on the unlawful arrest claim, because they acted in violation of clearly-established constitutional law by arresting Marinis on the basis of an anonymous tip.

The remaining defendant officers move for reconsideration of Judge Parker's decision, pursuant to Local Civil Rule 6.3.[1] The officers urge the Court to reconsider Judge Parker's conclusion that they lacked probable cause to arrest Marinis on two limited bases, arguing that the Court (1) mistakenly concluded that the telephone call which provided the basis for the arrest was anonymous; and (2) failed to consider a separate tip that, they claim, provided probable cause for the arrest. For the reasons that follow, the motion for reconsideration will be denied.

## DISCUSSION

I. *Anonymity of the Telephone Call*

The Supreme Court has repeatedly warned that "[u]nlike a tip from a known informant whose reputation can be assessed and who can be held responsible if her allegations turn out to be fabricated, see *Adams v. Williams,* 407 U.S. 143, 146–47, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972), 'an anonymous tip alone seldom demonstrates the informant's basis of knowledge or veracity,' *Alabama v. White,* 496 U.S.

---

1. The matter has been reassigned to me because of Judge Parker's appointment to the Court of Appeals.

[325,] 329, 110 S.Ct. 2412, 110 L.Ed.2d 301 [ (1990) ]." *Florida v. J.L.*, 529 U.S. 266, 270, 120 S.Ct. 1375, 146 L.Ed.2d 254 (2000). Accordingly, an anonymous tip, unless "suitably corroborated," *id.*, does not ordinarily carry "sufficient indicia of reliability to provide reasonable suspicion to make [an] investigatory stop," *White*, 496 U.S. at 327, 110 S.Ct. 2412 – let alone probable cause to arrest. *See also Kerman v. City of New York*, 261 F.3d 229, 235–36 (2d Cir.2001) (anonymous informants "present obvious problems: their reputation for veracity cannot be assessed, and they cannot be held responsible if their 'allegations turn out to be fabricated.'" (quoting *J.L.*, 529 U.S. at 270, 120 S.Ct. 1375)).

Judge Parker concluded that defendants' arrest of Marinis turns on whether the telephone call received by the defendants was anonymous. After reviewing a copy of the audio tape of the call,[2] Judge Parker determined that, contrary to defendants' contention, the tape revealed that "the caller clearly did not identify herself," and that the transcript prepared by the police, which purported to show the caller giving her name, "is simply incorrect." (9/25/01 Order at 3.) Judge Parker also noted that the caller actually was treated as anonymous by everyone involved, since "the caller made clear that she wished to remain anonymous, the officer who received the call agreed to treat it as an anonymous call, and the Department's records listed the call as 'anonymous.'" *Id.* Concluding that the call was anonymous, the Court held that the arrest was not supported by probable cause. The officers now argue that this conclusion was incorrect, and that a review of the original reel-to-reel tape of the call would make clear that the caller – who has now apparently been identified as Mrs. Hemwattie Bodu Docu – did identify herself as "Mrs. Docu" to the officer who received the telephone call.

It is unnecessary, however, to review the original tape, for even if I (unlike Judge Parker) were able to detect the words defendants claim are on the tape, the officers would still not be entitled to summary judgment.

The relevant portion of defendants' transcript of the call reads as follows:

| | |
|---|---|
| P.O. Bessinger: | And your name, Ma'am. Who am I speaking to. |
| Mrs. Docu: | This is Mrs. Docu. |
| P.O. Bessinger: | Mrs. What. |
| Mrs. Docu: | Docu— Do I have to give me name. |
| P.O. Bessinger: | If you don't want to, you don't have to. |
| Mrs. Docu: | OK. . . . |

Def. Ex. 4, at 2. The defendants' own transcript thus makes clear, at this and at other points in the conversation (*see, e.g., id.* at 3) that Bessinger had difficulty hearing the caller, who was speaking from a cellular phone, and did not, at least initially, hear the caller identify herself. It is equally clear that the caller, in turn, was aware that Bessinger had not initially heard her name, for he asked her to repeat herself. Moreover, immediately after attempting to repeat, the informant asked if

---

**2.** Apparently, the parties provided Judge Parker only with a cassette copy of the original reel-to-reel recording.

she could refrain from giving her name. Bessinger then told her that she need not give her name. Whatever the recording now shows was actually said, a reasonable factfinder could easily conclude that Bessinger never caught the informant's name, and that the informant was aware of this and believed she had been authorized to report anonymously.

Other evidence in the record is equally consistent with such an interpretation. While Bessinger now declares that he "received a telephone call from Mrs. Hemwattie Bodu Docu," Bessinger Aff. ¶ 3, he conspicuously does not assert that he knew the identity of the caller at the time.[3] To the contrary, the police department's internal call records identify the caller as an "anonymous" informant, Pl.Ex. A, and the other officers involved in the arrest have testified that they were not aware of the caller's identity at the time. *See* Def. Ex. 5 ("Fox Dep.") at 32; Def. Ex. 6 ("Tilley Dep.") at 17; Def. Ex. 10 ("Egloff Dep.") at 8. On these facts, assuming arguendo that close listening to a recording will confirm the defendants' transcript as accurate, there is at best a disputed issue of fact as to whether she must nevertheless be treated as an anonymous informer. There is thus no reason to reconsider Judge Parker's denial of summary judgment.

■ As Judge Parker correctly noted, tips by anonymous informants, standing alone, are generally insufficient to establish probable cause to arrest. In order for an anonymous tip to provide a basis for even for the reasonable suspicion necessary to justify the lesser intrusion of a *Terry* stop (*see Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)), the police must independently establish that the tip is "reliable in its assertion of ille-

gality, not just in its tendency to identify a determinate person." *J.L.*, 529 U.S. at 272, 120 S.Ct. 1375; *see also United States v. Tuter*, 240 F.3d 1292, 1298 (10th Cir. 2001) (holding that "[t]he minimal corroboration of innocent, readily observable facts was insufficient to establish the veracity or reliability" of anonymous caller or to link defendant with caller's allegation of criminal activity).

Both the rule and its rationale leave open the question whether, under particular factual circumstances, a given tip should be deemed "anonymous." On the one hand, a tipster whose actual identity is unknown to the police might nevertheless be identifiable (by voice, perhaps) as someone who has previously provided reliable information. *See J.L.*, 529 U.S. at 275, 120 S.Ct. 1375 (Kennedy, J., concurring). On the other, it is not obvious that a would-be tipster who inadvertently reveals information that later permits the police to identify her should be treated as an "identified" informant if she believed that her tip was provided anonymously or the police were not able to identify her before making the arrest. Similarly, where a tipster gives her name, but the police officer at the other end of the telephone does not *hear* the caller identify herself, it might reasonably be said that the police do not "know" that the informant is "identified." *But see id.* at 276, 120 S.Ct. 1375 (speculation by Justice Kennedy that due to the availability of caller identification technology, even an anonymous informant, like one who gives her name, might be subject to accountability for false reports).

■ As noted above, the rationale given in *J.L.* for discounting anonymous tips is the officer's inability to assess the reliability of an unknown informant, coupled with

---

3. Defendants' motion for reconsideration is not supported by a supplementary affidavit from Bessinger to this effect, even though by the time that motion was filed, the significance of this issue had become clear.

the informant's ability to make unsupported allegations with impunity. But in *J.L.*, both these factors were present. The instant case, and a few analogous cases noted below, reveal that sometimes only one of those rationales applies: if the *officer* mistakenly believes that the tip is anonymous, not having heard the informant give her name, he has no basis for judging her credibility, even though the informant has demonstrated her willingness to be identified and held accountable; if the *informant* mistakenly believes her identity is protected, not realizing that the officer has heard her name, recognized her voice, or electronically identified her phone number, the officer can investigate further, but the tipster may still believe that she is safe in making false accusations.

Since the Supreme Court's decision in *J.L.*, only a handful of courts have considered this potentially complex interaction between an informant's belief concerning her anonymity and the police's knowledge of an informant's identity, with no clear pattern of results.[4] To decide the instant motion, however, the Court need not attempt to resolve what makes an anonymous tip "truly" anonymous, particularly as the parties have not made any effort to address it. The one rock in this sea of uncertainty is that the Supreme Court has unequivocally held that an uncorroborated tip believed by both informant and officer to be anonymous does not create even a reasonable suspicion of criminal activity. *J.L.*, 529 U.S. 266, 120 S.Ct. 1375. Even assuming the accuracy of defendants' transcript, the record in this case would permit a reasonable jury to find that that is exactly what occurred here: that even though the informant in fact mentioned her name at one point, the officer didn't catch it, the informant knew that he didn't, and both agreed that the informant would not have to repeat it. On those facts, the case could not meaningfully be distinguished from *J.L.*: the tip would have to be treated as fully anonymous, probable cause was therefore lacking, and a reasonable officer should have known that there was insufficient evidence to arrest Marinis. Accordingly, defendants are not entitled to summary judgment.

## II. The Second Tip

The officers also assert that they are entitled to summary judgment on account of a separate basis for probable cause not addressed by Judge Parker. According to the defendants, a second, undisputably identified informant, Valerie Flores, pro-

---

4. *See, e.g., United States v. Fisher*, 145 F.Supp.2d 853, 859 (E.D.Mich.2001) (holding that cellular telephone call "was, for all practical purposes, anonymous" where the informant merely identified himself as "Mr. Johnson," the call could not be traced to informant prior to arrest, the informant promised to meet police at designated location but failed to do so, and officers discovered nothing to corroborate tip's allegations of illegal activity); *United States v. Person*, 134 F.Supp.2d 517, 524 (E.D.N.Y.2001) (holding that call from payphone was anonymous where caller "provided no information that could lead to her identification" and call could not be traced to an identified person); *United States v. Colon*, 111 F.Supp.2d 439, 440–43 (S.D.N.Y.2000) (holding that caller was not "truly" anonymous where she ex-plicitly refused to give her name several times, but placed the call from a traceable cellular phone, indicated that she had made a report of a prior incident, and named a police officer she believed would have knowledge of that report and her identity), *vacated on other grounds*, 250 F.3d 130 (2d Cir. 2001); *United States v. Hoskie*, No. 3:99–CR–128, 2000 WL 1052022, at **7–8 (D.Conn. July 26, 2000) (holding that tip is not anonymous where caller gave police dispatcher her name, age, and telephone number and "unequivocally indicated her willingness to tell the responding officers what she saw," and police dispatcher made clear to arresting officers that tip was from identified informant willing to talk to officers, not an anonymous caller).

vided Fox with information that "three persons in a red vehicle were driving around Irvington looking to assault a George Diaz who is the son of [Flores's] boss." Fox Dep. 67; Def. Mem. at 11. Fox had had prior dealings with Flores, and she assertedly provided this information (1) in person, (2) at roughly the same time as the information provided in the telephone call, and (3) outside the store where she works, which is down the street from the parking lot where Marinis ultimately was stopped and arrested. Fox Dep. 64–72.

■ Flores, however, provides a rather different account of her tip to the police than the version now advanced by the defendants. In her affidavit, Flores states that she overheard one of Diaz's friends tell him

> that there was a car, *I think he said red*, with three guys in it and they were *dissing* George. George said he was going to go out and look for these guys but I stopped him from leaving the store. About ten minutes later a girl and a guy came into the store and told George the same thing.

Def. Ex. 7 ("Flores Aff.") (emphasis added). When Fox subsequently arrived, Flores told him what she had heard (and then overheard the police dispatcher on Fox's radio informing the officers about the phone tip they had just received concerning "someone with a gun in a car"). *Id.* The basic facts regarding this informant's tip therefore remain in dispute. Contrary to the account given by Fox in his deposition testimony, Flores's affidavit indicates neither that she identified the car

in question (which she had not herself seen) as definitely red nor that the individuals in that car were "looking to assault" Diaz – rather, she asserts merely that those individuals were "dissing" him. On Flores' own version of what she told the officers, there is no reason to think the "three guys" in the possibly red car were engaged in any criminal activity at all. Probable cause to arrest Marinis thus cannot be established based on the disputed facts concerning Flores's tip.[5]

### III. *Collective Knowledge*

Although the defendants do not argue that probable cause was established by the two tips in combination, the Court will address that issue in order to ensure that all issues suggested by the defendants' motion have been considered in full. Under the collective or imputed knowledge doctrine, "an arrest or search is permissible where the actual arresting or searching officer lacks the specific information to form the basis for probable cause or reasonable suspicion but sufficient information to justify the arrest or search was known by other law enforcement officials initiating or involved with the investigation." *United States v. Colon,* 250 F.3d 130, 135 (2d Cir.2001); *see Illinois v. Andreas,* 463 U.S. 765, 771 n. 5, 103 S.Ct. 3319, 77 L.Ed.2d 1003 (1983) ("[W]here law enforcement authorities are cooperating in an investigation, as here, the knowledge of one is presumed shared by all."). Under Second Circuit precedent, application of this doctrine "requires that at some point along the line, some law enforcement official – or some agglomeration of such officials – involved must possess sufficient information to permit the conclusion that a search or arrest is justified."[6] *Colon,* 250

---

**5.** Even on defendants' account of Flores's tip, the police would not have had probable cause to arrest Marinis based on the cursory information that she provided. Given the number of red cars in any given community, the village of Irvington surely included, and the fact that the tip referred to *three* teenagers in a red car, there was no probable cause to arrest any

teenager in a red car—such as Marinis, who was the *only* person in the car stopped by the police. Fox Dep. at 25, 29, 32; Tilley Dep. at 24.

**6.** The Second Circuit has not yet determined "whether or under what circumstances

F.3d at 136; *see also United States v. Santa,* 180 F.3d 20, 28 (2d Cir.1999) (noting that "imputation of knowledge from one police officer to another" requires that officers be "working on the same case").

Applying this rule here, the two tips together might well have provided reasonable suspicion sufficient to justify a *Terry* stop of Marinis. An officer, aware of an anonymous tip that three or four teenagers in an identified car had guns, who then heard from a person known to him that "three guys" in a red car were "dissing" an identified person, and who then spotted a red car bearing the license plate reported by the anonymous informant in the vicinity referred to by both informants, would likely be justified in approaching the driver of the car to ask some questions. However, the defendants do not argue that the detention of Marinis was anything but an arrest. Even taken together, the two tips do not furnish probable cause sufficient to justify taking Marinis into custody or charging him with a crime, since neither tip provides tangible information suggesting a fair probability that Marinis had committed any criminal activity.

### CONCLUSION

Accordingly, for the foregoing reasons, the defendants' motion for reconsideration of Judge Parker's Decision and Order is DENIED.

SO ORDERED.

knowledge known collectively by more than one officer but not by any single officer may be aggregated to provide reasonable suspicion or probable cause." *Colon,* 250 F.3d at 136 n. 3. Whether, at any point, any of the defendant officers in this case knew all of the relevant details of the two tips is a question of fact that the Court does not purport to resolve here.