08-1939-cr
USA v. Lucky

**UNITED STATES COURT OF APPEALS**

**FOR THE SECOND CIRCUIT**

_____

August Term, 2008

(Argued:  April 24, 2009                                    Decided: June 19, 2009)

Docket No. 08-1939-cr

_____

UNITED STATES OF AMERICA,

*Appellee*,

– v. –

DAMON LUCKY,

*Defendant-Appellant*.

_____

Before: CALABRESI, KATZMANN, *Circuit Judges*, EATON, *Judge.**

     Defendant Damon Lucky ("Defendant") was arrested following a brief stop of a car that

matched the description of a vehicle used in a drive-by shooting.  Following a pat down, police

officers found a weapon in his possession, and he was arrested and later convicted of being a

felon in possession of a firearm.  Defendant appeals the admission of the weapon, a possible

_____

* The Honorable Richard K. Eaton, United States Court of International Trade, sitting by
designation.

-1-

Speedy Trial Act violation, the fact that jury selection occurred without his presence, and the constitutional basis for criminalizing felon possession of a firearm. The judgment of the district court is AFFIRMED.

> SREEVAMSHI C. REDDY, Assistant United States Attorney (David C. James, Assistant United States Attorney, *on the brief*), *for* Benton J. Campbell, United States Attorney for the Eastern District of New York, Brooklyn, N.Y., *for Appellee.*
>
> NORMAN TRABULUS, New York, N.Y., *for Defendant-Appellant*.

CALABRESI, *Circuit Judge*:

## BACKGROUND

### I.      Investigation, Stop, Search, and Arrest[1]

A firefighter witnessed a shooting on a street corner in Brooklyn and reported to the New York Police Department ("NYPD") that he had seen a black male, who was 5'6" tall, fire several shots at a crowd of people and flee in a dark sport utility vehicle ("SUV") with New York State license plate number DBM 2474. Two days after the shooting, a group of police officers patrolling the same area saw a dark SUV with New York license plate number DBM 2474, which they recognized from the report of the shooting. The officers briefly followed the SUV, confirmed with the local police precinct that the NYPD was still searching for that vehicle, and

---

[1] The facts described here are based upon those found by the District Court at the suppression hearing based upon the testimony of police officers that the District Court found credible.

pulled it over. At the time, the police officers did not recall from the report of the shooting that the suspect was 5'6" inches tall; nor did they seek to get more details about the suspect.

The SUV's windows were darkly tinted and the police officers could not see inside. Officers approached the driver's side and asked the driver, Defendant Damon Lucky, to roll down the windows and show his hands. After some resistance to police requests, officers opened the driver's side door and asked Defendant to step out of the vehicle. Defendant refused to do so, officers repeated the order, Defendant refused again, and the officers pulled him from the car. As officers removed Defendant from the SUV, Defendant moved his right arm, "pull[ing] down towards the front" as if reaching for his waist band. Officers placed Defendant on his stomach and handcuffed him. At this point, it was clear that Defendant was not 5'6" tall, but was much taller. The officers then rolled Defendant over, onto his back, and as they did so, Defendant's jacket "opened up a little bit" allowing police to see a gun tucked into his wasteband. Police placed Defendant under arrest and recovered a fully-loaded 9-millimeter semi-automatic handgun from his waistband.

## II. Pretrial Period

Defendant was indicted for being a felon in possession of a firearm. He was arraigned on the indictment on January 26, 2005, and a magistrate judge entered an order of excludable delay until February 23, 2005, the date of the initial status conference before the District Court. At a series of status conferences, the District Court entered orders of excludable delay, stating that it was in the interests of justice and with the consent of the parties.

At a status conference on May 19, 2005, defense counsel reported that it had not yet considered the possibility of a plea bargain because Defendant's "main focus" had been on "trying to put together a bail package." The District Court then referred Defendant's bail application to a magistrate and said that it would "exclude" the time until June 23, 2005, the next scheduled status conference, for plea negotiations. There was no statement that the exclusion was in the interests of justice. At the June 23, 2005 status conference, defense counsel reported that a plea bargain was unlikely, and "it appears that this case is headed towards trial."

## III.    Suppression Motion

Defendant moved to suppress the handgun that police officers recovered during the traffic stop. The District Court denied the motion. The court found the police officer's testimony to be credible and reasoned that once police officers saw an SUV matching the description of the vehicle involved in a recent shooting with the same license plate number, they were justified in conducting a brief stop. The court then explained that the police officers behaved reasonably in asking the occupants of the car to step out of the vehicle, "where the basis for the stop is a shooting that had occurred . . . with respect to that vehicle two days before," and that the police officers were justified in forcibly removing Defendant from the car when he refused to comply with the officers' multiple requests to leave the vehicle.

## IV.    Jury Selection

When jury selection was scheduled to begin, several pretrial motions had not yet been

adjudicated.  Defendant refused to take part in jury selection, stating that he would not change into civilian clothing, and insisting that before jury selection, the court must decide the various pretrial motions.  The magistrate running jury selection told Defendant that he would be better off wearing civilian clothing and that the District Court would address pretrial motions prior to the start of trial.  Defendant refused, insisting "[t]he marshals can escort me out of here and take me back."  The magistrate once again explained that Defendant had  nothing to gain by delaying jury selection, and Defendant stood up and declared "I will not proceed.  You can proceed without my presence.  I want to leave."

The magistrate ordered Defendant to sit down and explained that if he left he would be waiving the right to be present for jury selection.  At this point, Defendant and the magistrate had a convoluted exchange about waiver.  Defendant insisted "I'm going to the back, but I'm not waiving anything."  The magistrate stated that "by going in the back you're waiving.  Do you understand that?" Defendant replied "No, I don't.  I do not understand that."  The magistrate then ordered Defendant to "stay in the room if you're not waiving your right."  Defendant insisted "I do not wish to be here."  The magistrate replied "then you're waiving your rights."  Defendant responded "I don't believe that I am," and the magistrate stated "[w]ell, it isn't a matter of what you believe.  By walking out you, in effect, are waiving your right. Is that what you want to do? You want to walk out?"  Defendant yet again stated that he was not: "I'm not waiving any right by walking out.  Where is that written anywhere that if I walk out of here I'm waiving a right?"  The magistrate answered, "I'm telling you that," and then asked "[w]hat is your choice?"  Defendant replied "I'm not going to be here," added "I'm also not waiving anything," and left the courtroom.

After Defendant left, the magistrate stated that it would be best if the trial judge would speak with Defendant prior to jury selection and conduct jury selection. The judge explained to Defendant that he would not be harmed by raising any issues not yet decided by the court after trial. The judge said that he would proceed with jury selection in the afternoon and confirmed that Defendant would be present in the courtroom in regular clothing. Defendant said that he would.

That afternoon, defense counsel contacted the judge. Defendant communicated that "he was peacefully protesting by not putting on [civilian] clothing" or participating in jury selection "until the Court decides all the motions." The judge advised Defendant that this was not a wise choice, and Defendant insisted "[t]hat is my decision," adding "I am not waiving any thing, any rights, but that is my decision." The judge looked into putting on a feed of the jury selection in the holding cells so that Defendant could watch. When he was told that this was not possible, the judge ordered that arrangements be made to put Defendant in the Judge's robing room so that he could hear the proceedings and ordered that "[a]t appropriate points we will take breaks and allow [defense counsel] to consult with him."

Defendant left the courtroom and defense counsel consulted with him. Defense counsel then notified the court that Defendant did not "wish to participate in this proceeding at all by audio or video . . . [or] to listen to the proceeding or anything else or have me consult with him for that matter." The Marshals confirmed that Defendant refused to come out of his cell and would have to be removed by force. At that point, the judge observed that he was not required to force Defendant out of his cell and asked whether Defendant would "come out and talk to me for

a moment" so that Defendant could be advised "of his foolishness by his course of conduct." Defendant would not.

At that point, the judge announced that he would "try again" the next day to convince Defendant to participate and, if not, proceed with jury selection. Defense counsel made clear that Defendant "did not wish to participate any further in this matter . . . and that he did not wish to participate by way of audio or video." Defense counsel explained that Defendant had been "advised . . . of the terrible risk that he was taking by embarking on this kind of conduct." Jury selection began with Defendant absent. The judge told prospective jurors that Defendant was not present and that he hoped he would be there the following day. He also instructed the jurors to "draw no inference from that fact . . . or in any way consider that fact."

The following morning, Defendant came to court and again insisted that he would not take part in jury selection until all pretrial issues were resolved. The judge once again advised Defendant to attend jury selection, and Defendant responded, "I will not be partaking in this matter in any form or fashion. I do not wish to review the video, and I ask you to respect the fact that I wish to stay in the cell." Defendant returned to his cell, and his lawyer consulted with him. Defense counsel then informed the court that Defendant still would not participate and told the court that Defendant was receiving transcripts of the proceedings. At that point, the Government asked the court to confirm that Defendant had made a knowing waiver, and the court agreed that Defendant had done so.

**V.     Trial**

The following day, Defendant came to court in civilian clothes and stayed there throughout the trial. Following a trial, the jury convicted Defendant.

**DISCUSSION**

**I.     Suppression**

Defendant first argues that police officers violated his Fourth Amendment rights by stopping his car and asking him to step out of the vehicle, and that therefore the gun discovered in his pocket should have been suppressed. We review *de novo* legal conclusions and mixed questions of law and fact, such as whether the Fourth Amendment was violated and whether there was reasonable suspicion to justify a *Terry* stop. *Ornelas v. United States*, 517 U.S. 690, 699 (1996); *Terry v. Ohio*, 392 U.S. 1, 30 (1968); *United States v. Bayless*, 201 F.3d 116, 132 (2d Cir. 2000). We review for clear error findings of fact related to a motion to suppress, *Bayless*, 201 F.3d at 132., giving special deference to findings that are based on determinations of witness credibility, *see United States v. Isiofia*, 370 F.3d 226, 232 (2d Cir. 2004).

If police have a reasonable and articulable suspicion, they may briefly stop someone. *See Illinois v. Wardlow*, 528 U.S. 119, 123 (2000); *Terry*, 392 U.S. at 30 (1968). This authority includes the right to halt a moving vehicle, *see United States v. Hensley*, 469 U.S. 221, 226 (1985), and to investigate prior criminal conduct, *see id.* at 229. When police stopped Defendant's car, they certainly had reasonable suspicion in light of the fact that the automobile had the same license plate number and description as one used to flee from a shooting two days earlier.

-8-

Defendant argues, however, that even if the initial stop was permissible, police should have immediately let him go because he is several inches taller than the alleged shooter. This argument is unavailing. First of all, the police — who were found credible by the District Court — stated that they did not recall the exact height of the shooter. Second, even if police knew they should be looking for a man who was a particular height, the driver's height was not apparent while he was inside the car and became noticeable only after he had refused police instructions, had reached for his waistband, and having been removed from the car, had been placed on the ground on his stomach. At that point, all that the officers did was roll Defendant onto his back, a completely reasonable action under the circumstances. Finally, as discussed above, there was reasonable suspicion at least to speak briefly with whoever was driving a car that had just been used in a shooting, even if it had been clear that the driver had not been the shooter.

## II. Speedy Trial Act

Defendant next contends that the indictment should have been dismissed because of a Speedy Trial Act ("STA"), 18 U.S.C. §§ 3161-3174, violation. "We review the district court's findings of fact as they pertain to a speedy trial challenge for clear error and its legal conclusions *de novo*." *United States v. Oberoi*, 547 F.3d 436, 443 (2d Cir. 2008) (internal quotation marks omitted).

The STA mandates the "dismissal of charges against a defendant who is not indicted, arraigned, or brought to trial within periods of time set forth in the statute." *Id.* (internal quotation marks omitted). The trial must begin within seventy days of the indictment. *See* 18

U.S.C. § 3161(c)(1). Notably, however, "the Act contemplates the exclusion of certain periods of delay . . . from the calculation." *Oberoi*, 547 F.3d at 443. Some exclusions are automatic. *See, e.g.*, 18 U.S.C. § 3161(h)(1). Other exclusions require judicial action. For instance, the STA provides for exclusion if the district court "sets forth, in the record of the case, either orally or in writing, its reasons for finding that the ends of justice served by the granting of such continuance outweigh the best interests of the public and the defendant in a speedy trial." 18 U.S.C. § 3161(h)(7)(A)[2]; *see also Zedner v. United States*, 547 U.S. 489, 508 (2006); *Parisi v. United States*, 529 F.3d 134, 139-40 (2d Cir. 2008).

Defendant argues that there were no proper STA continuances covering the period of May 20, 2005 through July 28, 2005. In particular, Defendant claims that while the May 20, 2005 status conference referenced "exclusion," with respect to a given time period, there was no required "ends of justice" finding under 18 U.S.C. § 3161(h)(7). The Government contends that even if the May 20 exclusion was invalid under 18 U.S.C. § 3161(h)(7), because the District Court did not make an "ends of justice" finding, it was valid under 18 U.S.C. § 3161(h)(1), which permits exclusions for a nonexclusive list of "other proceedings concerning the defendant." This is so, the Government contends, because the May 20 exclusion was given to permit time for plea negotiations.

Several other circuits have indicated that plea negotiations can trigger the 18 U.S.C. § 3161(h)(1) automatic exclusion. *See, e.g.*, *United States v. Van Someren*, 118 F.3d 1214, 1218-19 (8th Cir. 1997); *United States v. Bowers*, 834 F.2d 607, 610 (6th Cir. 1987); *United*

---

[2] This section was previously designated 18 U.S.C. § 3161(h)(8) but was resdesignated as 18 U.S.C. § 3161(h)(7) by the Judicial Administration and Technical Amendments Act of 2008, Pub. L. No. 110-406, 122 Stat. 4291, 4294.

*States v. Montoya*, 827 F.2d 143, 150 (7th Cir. 1987). We are not yet convinced. Section 3161(h)(1) covers "other proceedings," which usually denotes formal judicial processes. The nonexclusive list of examples given in that section includes formal processes over which the parties have no direct control. Plea negotiations, however, are informal discussions between the parties and are directly controlled by the parties, not the court. Therefore, plea negotiations do not fit comfortably into the "other proceedings" language of section 3161(h)(1).

We need not, however, determine whether plea negotiations can nevertheless qualify as "other proceedings" under section 3161(h)(1), because Defendant's argument fails for another reason. Defendant points to seventy days that he asserts were either not excluded or excluded improperly. But, one of those days, June 23, is a day on which the District Court held a status conference. And a status conference is manifestly a "proceeding," which, while not listed in the nonexclusive examples contained in 18 U.S.C. § 3161(h)(1), is very similar to the examples given in that section. We, therefore, hold that June 23 was automatically excluded from STA consideration under 18 U.S.C. § 3161(h)(1). As a result, Defendant can, at most, identify only 69 nonexcluded days. And that is a period of delay that is permissible under the STA. *See* 18 U.S.C. § 3161(c)(1).

## III.    Right to be Present at Jury Selection

Defendant next claims that he was denied his right to be present when jury selection was conducted. That argument is without merit. Defendant has a Fifth and Sixth Amendment right, recognized by Fed. R. Crim. P. 43, to be present at all stages of his trial, including jury selection. *United States v. Nichols*, 56 F.3d 403, 413 (2d Cir. 1995). That right may be waived, however, if

-11-

the defendant "voluntarily, knowingly, and without justification" absents himself from the trial. *United States v. Sanchez*, 790 F.2d 245, 249 (2d Cir. 1986) (internal quotation marks omitted).

In reviewing a case where parts of the trial proceeded in the defendant's absence, we examine the record in light of three issues. First, we consider "whether the district court properly exercised its discretion in finding that the defendant knowingly and voluntarily waived the right." *Nichols*, 56 F.3d at 416 (internal quotation marks omitted). "If the court properly found the right to be waived, we next consider whether the district court abused its discretion in concluding there was on balance a controlling public interest to continue the trial in the defendant's absence." *Id.* (internal quotation marks omitted). "Finally, if the district court was in error to continue the trial in a defendant's absence, we ask whether that error was harmless . . . ." *Id.* (internal quotation marks omitted).

On the facts before us, the District Court did not err in concluding that Defendant waived his right to be present for jury selection and that continuing with jury selection was in the public interest. *See Cuoco v. United States*, 208 F.3d 27, 32 (2d Cir. 2000); *see also Crosby v. United States,* 506 U.S. 255, 262 (1993) (noting that if a defendant fled after the start of trial, the defendant would know that the likely consequence would be that the trial would continue in his absence). Defendant's argument, therefore, fails.

## IV.     Constitutionality of Federal Prohibition of Being a Felon in Possession of a Firearm

Finally, Defendant contends that Congress lacked the authority to prohibit his conduct because the gun that he possessed — which had traveled across state lines at some past time — did not constitute a sufficient nexus to interstate commerce. The issue is, however, not an open

one; both the Supreme Court and our Court have made clear that there is a constitutionally sufficient nexus between being a felon in possession of a firearm and interstate commerce when the firearm in question has previously moved in interstate commerce. *See Scarborough v. United States*, 431 U.S. 563 (1977); *United States v. Sorrentino*, 72 F.3d 294, 296 (2d Cir. 1995). Accordingly, we need not discuss the claim further.

## CONCLUSION

We have reviewed all of Defendant's claims and find them meritless. The judgment of the District Court is AFFIRMED.