20-1070-cv
Vasquez v. Maloney, et al.

# In the
# United States Court of Appeals
## for the Second Circuit

August Term, 2020
No. 20-1070-cv

KIM VASQUEZ,
*Plaintiff-Appellee,*

*v.*

DETECTIVE CHRIS G. MALONEY, OFFICER VICTOR CARABALLO, OFFICER
BRIAN DUNNE, OFFICER THOMAS LATORRE, ORLANDO CRUZ, POLICE
OFFICER BRIAN CALLANAN,
*Defendants-Appellants.*[*]

Appeal from the United States District Court
for the Southern District of New York.
No. 7:15-cv-8848 — Nelson S. Román, *Judge.*

SUBMITTED: DECEMBER 11, 2020
DECIDED: MARCH 4, 2021

[*] The Clerk of the Court is directed to amend the caption as set forth above.

Before: CABRANES, PARK, and NARDINI, *Circuit Judges*.

---

Defendants-Appellants, officers of the Clarkstown Police Department in Rockland County, New York, appeal from an order entered March 19, 2020, in the United States District Court for the Southern District of New York (Nelson S. Román, *Judge*), denying their motion for summary judgment on the basis of qualified immunity on Plaintiff-Appellee Kim Vasquez's unlawful search and seizure claims. We conclude that Defendants-Appellants violated clearly established law by detaining and frisking Vasquez based on nothing more than an officer's unconfirmed hunch that there might be an open warrant for his arrest. We therefore **AFFIRM** the district court's order denying Defendants-Appellants' motion for summary judgment on the basis of qualified immunity.

---

KIM VASQUEZ, *Plaintiff-Appellant Pro Se*, New City, NY.

PAUL E. SVENSSON, Hodges Walsh & Burke, LLP, White Plains, NY, *for Defendants-Appellants*.

WILLIAM J. NARDINI, *Circuit Judge*:

On January 5, 2015, police officers stopped Kim Vasquez as he and his daughters walked out of a Target store at the Palisades Center Mall. They detained him and frisked him for weapons. The officers admittedly had no reason to think he had committed a crime, but one officer speculated that there "might be" a warrant for Vasquez's arrest. Put into legal terms, the

officers clearly lacked any facts giving them "reasonable suspicion" that Vasquez was involved in criminal activity (much less carrying a dangerous weapon) or wanted for a crime. This was precisely the type of situation that the Supreme Court identified many years ago, in *Terry v. Ohio*, 392 U.S. 1 (1968), as a paradigmatic violation of the Fourth Amendment.

This case comes to us on denial of the officers' summary judgment motion, and we hold that the facts—as the record currently stands, and construed in favor of Vasquez as the non-moving party—do not establish that the officers are entitled to qualified immunity as a matter of law. We do not know how the factual record might develop at trial or whether the evidence presented might ultimately lead to a different result. At this juncture, we simply hold that the district court properly denied the officers' motion for summary judgment.

## I.  BACKGROUND

On November 10, 2015, Vasquez, proceeding *pro se*, filed a complaint in the United States District Court for the Southern District of New York (Nelson S. Román, *Judge*). He sued several unnamed officers of the

Clarkstown Police Department in their individual capacities pursuant to 42 U.S.C. § 1983, alleging that they violated his rights under the Fourth Amendment of the United States Constitution when they stopped and frisked him without a warrant or probable cause. Following identification of the officers involved, Vasquez filed an amended complaint naming Defendants-Appellants Chris Maloney, Victor Caraballo, Brian Dunne, Thomas LaTorre, Orlando Cruz, and Brian Callanan (together, the "Officers" or "defendants").[1]

The complaint alleged that, on the night of January 5, 2015, Vasquez encountered several of the Officers while he was helping his two young daughters into his wife's car in the parking lot of the Palisades Center Mall. The Officers "surrounded" him and "demanded that [he] 'freeze,' put his arms in the air, [] turn around to face a pillar, and keep his hands up on the

---

[1] Vasquez filed his first amended complaint on February 1, 2016. We refer to his operative, second amended complaint, filed on December 19, 2018, as simply the "complaint," except when necessary to distinguish it from previous versions.

4

pillar." App'x 55. Vasquez claimed that the Officers then frisked him, rubbing and touching his body, "including [his] private parts," while his family watched "this humiliating experience." App'x 56. The Officers had Vasquez "wait and remain seized[] until it was deemed he could go." App'x 56. Vasquez alleged that this conduct violated his Fourth Amendment rights because the Officers seized him based only on an unconfirmed hunch that there might be an outstanding warrant for his arrest.

On June 13, 2019, following discovery, the defendants moved for summary judgment, arguing that they did not violate Vasquez's constitutional rights because they had probable cause to detain him or, even if not, that they were entitled to qualified immunity. In connection with the motion for summary judgment, Detective Maloney filed an affidavit and the defendants jointly submitted a statement of facts that relied entirely, as relevant here, on that affidavit. Vasquez subsequently filed two affidavits in response, with substantially identical versions of the facts presented in his complaint.

5

According to the undisputed portions of the defendants' factual submissions, on January 5, 2015, they were conducting an investigation into the passing of counterfeit money at a Target store in the Palisades Center Mall. Detectives Cruz and Callanan were inside the store's loss prevention office monitoring the security cameras facing the entrance and exits. Detective Maloney and Officers Caraballo and LaTorre were in a police cruiser in the parking lot. [2]

While monitoring the security cameras, Detective Cruz recognized Vasquez from Cruz's prior work on the Rockland County Drug Task Force and Vasquez's prior arrests in Clarkstown. Cruz communicated by radio to Detective Maloney that Vasquez was exiting the mall in the direction of the parking lot and "that he [Cruz] believed that there might be a judicially issued Warrant for [Vasquez's] arrest." App'x 235. The Officers—although the record is not clear who was involved in that decision or who was

---

[2] It is not clear from the record where Officer Dunne was during the encounter, other than that he was "assigned to routine patrol at the Mall that night." App'x 295.

6

involved in Vasquez's detention—decided to detain Vasquez "until it could be verified that the Warrant remained open." App'x at 235. They surrounded Vasquez in the parking lot, instructed him to freeze, placed him against a wall, and "likely" performed a "basic cursory pat down," ultimately removing Vasquez's wallet from his pocket. App'x 235, 262–63. Vasquez was detained for approximately two minutes, until communication with the radio dispatcher revealed that there was no outstanding warrant for Vasquez's arrest, at which point the Officers released him.[3]

In an opinion and order entered on March 19, 2020, the district court denied the defendants' motion for summary judgment as to the Fourth

---

[3] In their summary judgment submissions, the Officers note that their department received notice of an arrest warrant that had been issued for Vasquez on June 13, 2014, by the Rockland County Supreme Court. But the Officers further note that Vasquez appeared in court for arraignment on that charge on September 24, 2014, and that he was released on bail. Thus, although there had been an active arrest warrant for Vasquez earlier in 2014, for the three months immediately preceding the events at issue here—from September 24, 2014, until Cruz spotted Vasquez on January 5, 2015—that arrest warrant had been closed.

7

Amendment claims, determining that the Officers were not entitled to qualified immunity because clearly established law prohibits detaining and frisking a person without a warrant, probable cause, or reasonable suspicion of criminal activity. *See Vasquez v. Maloney*, No. 15-CV-8848, 2020 WL 1309989, at *7–11 (S.D.N.Y. Mar. 19, 2020).[4] This appeal followed.

## II.    DISCUSSION

We review *de novo* a district court's determination of qualified immunity insofar as it is a legal issue. *See Tangreti v. Bachmann*, 983 F.3d 609, 615 (2d Cir. 2020).  Although our jurisdiction is generally limited to "final decisions" of the district courts, 28 U.S.C. § 1291, an order that denies qualified immunity may be immediately appealed under the collateral order doctrine "to the extent that it turns on an issue of law." *Mitchell v. Forsyth*,

---

[4] The district court granted summary judgment for defendants on Vasquez's claims of inappropriate contact under the Fourth Amendment, religious freedom and intimate association claims under the First Amendment, and state law claims. *See Vasquez*, 2020 WL 1309989, at *14.  These claims are not before us on appeal.

8

472 U.S. 511, 530 (1985); *see also Tangreti*, 983 F.3d at 615. The parties do not dispute any facts material to the issue of qualified immunity, and we have jurisdiction to review the district court's denial of summary judgment on the purely legal question of the defendants' qualified immunity. As always when reviewing a ruling on summary judgment, we draw all reasonable inferences from the existing factual record in favor of the non-moving party: here, Vasquez. *See Naumovski v. Norris*, 934 F.3d 200, 210 (2d Cir. 2019) ("When considering qualified immunity at the summary judgment stage, courts must construe all evidence and draw all reasonable inferences in the non-moving party's favor." (internal quotation marks omitted)).

## A. Qualified Immunity

"Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments about open legal questions," *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011), preserving a balance between "vindication of citizens' constitutional rights and . . . public officials' effective performance of their duties," *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1867

(2017) (internal quotation marks and citation omitted). The dispositive inquiry "is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Hernandez v. Mesa*, 137 S. Ct. 2003, 2007 (2017) (quoting *Saucier v. Katz,* 533 U.S. 194, 202 (2001)). Defendants moving for summary judgment on the basis of qualified immunity bear the burden of "demonstrating that no rational jury could conclude (1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct." *Coollick v. Hughes*, 699 F.3d 211, 219 (2d Cir. 2012) (internal quotation marks omitted) (quoting *al-Kidd*, 563 U.S. at 735).[5]

To determine whether a right is clearly established, "we generally look to Supreme Court and Second Circuit precedent existing at the time of

---

[5] At the pleading stage, the plaintiff must plausibly allege that the defendants violated clearly established law. *See al-Kidd*, 563 U.S. at 735. "Because qualified immunity is an affirmative defense," however, at the summary judgment stage "the defendants bear the burden of showing that the challenged act was objectively reasonable in light of the law existing at that time." *Tellier v. Fields*, 280 F.3d 69, 84 (2d Cir. 2000) (quoting *Varrone v. Bilotti*, 123 F.3d 75, 78 (2d Cir. 1997)).

the alleged violation." *Garcia v. Does*, 779 F.3d 84, 92 (2d Cir. 2015) (internal quotation marks omitted) (quoting *Okin v. Vill. of Cornwall-On-Hudson Police Dep't*, 577 F.3d 415, 433 (2d Cir. 2009)). The Supreme Court has repeatedly admonished lower courts "not to define clearly established law at a high level of generality." *al–Kidd*, 563 U.S. at 742. "This inquiry must be undertaken in light of the specific context of the case, . . . [which] is especially important in the Fourth Amendment context, where . . . it is sometimes difficult for an officer to determine how the relevant legal doctrine . . . will apply to the factual situation the officer confronts." *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (internal quotation marks and citations omitted). "[A] case directly on point" is not necessarily required, "but existing precedent must have placed the statutory or constitutional question beyond debate." *al–Kidd*, 563 U.S. at 741. That is, there must be "a case where an officer acting under similar circumstances . . . was held to have violated the Fourth Amendment," *White v. Pauly*, 137 S. Ct. 548, 552 (2017), such that the unlawfulness of the defendant officer's conduct would "follow

11

immediately," *D.C. v. Wesby*, 138 S. Ct. 577, 590 (2018) (quoting *Anderson v. Creighton*, 483 U.S. 635, 641 (1987)).

**B. The Officers' Actions Violated Clearly Established Law as It Stood in January 2015**

Law that was clearly established in January 2015 put the Officers on notice that their detention of Vasquez was unconstitutional. Although a warrantless seizure is generally impermissible under the Fourth Amendment, the Supreme Court long ago held in *Terry v. Ohio* that police officers may, as a legitimate investigative function, in "appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possibly criminal behavior even though there is no probable cause to make an arrest." 392 U.S. at 22. *Terry* involved officers stopping a person "because they suspected he was about to commit a crime," but police may also conduct an investigative stop if they "have a reasonable suspicion, grounded in specific and articulable facts, that a person they encounter was involved in or is wanted in connection with a completed felony." *United States v. Hensley*, 469 U.S. 221, 227, 229 (1985); *see*

*also United States v. Lucky*, 569 F.3d 101, 106 (2d Cir. 2009) (upholding *Terry* stop based on reasonable suspicion that vehicle was connected to a crime completed two days earlier).

The reasonable suspicion standard is "not high." *United States v. Bailey*, 743 F.3d 322, 332 (2d Cir. 2014) (quoting *Richards v. Wisconsin*, 520 U.S. 385, 394 (1997)). Reasonable suspicion requires less than the "fair probability" of wrongdoing needed to support probable cause, *United States v. Padilla*, 548 F.3d 179, 186–87 (2d Cir. 2008), and it can "arise from information that is less reliable," such as an unverified tip, *Alabama v. White,* 496 U.S. 325, 330 (1990). A court must evaluate the circumstances surrounding the stop "through the eyes of a reasonable and cautious police officer on the scene, guided by his experience and training," *Padilla*, 548 F.3d at 187 (quoting *United States v. Bayless*, 201 F.3d 116, 133 (2d Cir. 2000)), and making "commonsense judgments and inferences about human behavior," *Kansas v. Glover*, 140 S. Ct. 1183, 1189 (2020) (quoting *Illinois v. Wardlow*, 528 U.S. 119, 125 (2000)).

On this record, the Officers did not satisfy even the low threshold that would satisfy either justification for an investigative *Terry* stop. That is, they offered no specific and articulable facts—at all—supporting an inference that Vasquez was (1) involved in or (2) wanted in connection with a crime.

First, the Officers have supplied no factual basis for any reasonable suspicion that Vasquez was involved in criminal activity at the time of the stop. With respect to their ongoing investigation of the passing of counterfeit currency at the Target store, at no point did the Officers suggest (much less offer facts supporting an inference) that Vasquez was involved in such a crime. The exceedingly spare statement of facts submitted by the Officers in support of their summary judgment motion recited nothing more than the following: an officer saw Vasquez walking out of the store on video surveillance, recognized Vasquez from the officer's prior work on the Rockland County Drug Task Force, and knew that Vasquez had "prior arrests." App'x 261. The Officers' briefing on this point is unclear, but they appear to have abandoned their claim, made before the district court, that

14

they had reasonable suspicion of Vasquez's wrongdoing. If so, that would be a wise decision. Although it is well settled that police officers may reasonably consider a person's criminal history as part of the total mix of information guiding their reasonable suspicion analysis, it has been equally well settled since at least 1977 that seeing a person with a criminal record in a public place, with nothing more, does not give rise to reasonable suspicion that the person has engaged or is engaging in further criminal activity. *Compare United States v. Oates*, 560 F.2d 45, 59–60 (2d Cir. 1977) ("[A] police officer's knowledge of a person's reputation as a prominent narcotics trafficker can properly be considered, along with other factors, as an element justifying the officer's reasonable suspicion or his belief that probable cause exists.") *with id.* at 59 ("[I]nvestigative stops certainly cannot be made merely because the detainees have criminal records or bad reputations[.]" (internal quotation marks, alterations, and citation omitted)); *see also United States v. Lifshitz*, 369 F.3d 173, 188 (2d Cir. 2004) ("Suspicion, to be

15

reasonable, . . . necessitates not only a focus upon a particular person, but also concentration on a specific series of events.").

The only justification the Officers have meaningfully advanced on appeal for detaining Vasquez is the second basis for a *Terry* stop, namely, that he was wanted in connection with a completed crime. But they offer no "specific and articulable facts" that could have reasonably warranted such a belief. *Hensley*, 469 U.S. at 229. Instead, the Officers seek to justify their seizure of Vasquez based solely on Detective Cruz's recollection of Vasquez and his previous arrests by Clarkstown police, and Detective Cruz's uncorroborated belief that "there might be" a warrant for Vasquez's arrest. App'x 235. But, absent any basis in articulable facts, speculation that a warrant "might" be outstanding is the quintessential "inchoate and unparticularized suspicion or 'hunch,'" *Terry*, 392 U.S. at 27, and here it was readily dispelled by the dispatcher's report that there was no outstanding warrant.

Our holding today is very much grounded in the specific facts in the record—as all rulings on summary judgment must be. On appeal, the Officers argue in their briefs that they acted based on "the information provided by Detective Cruz that a judicial arrest warrant *had been issued* for [Vasquez], and *he believed it was open*." Defs.-Appellants Br. at 10 (emphasis added). But that is not what Detective Maloney said in his (undisputed) affidavit, and therefore it is not the evidence that we are called upon to evaluate. All that Detective Maloney stated in his affidavit was that Detective Cruz said "he believed that there might be" a warrant. App'x at 235. [6] Drawing all inferences in favor of the party resisting summary

---

[6] As noted above, in their factual submission the Officers also included the assertion that a warrant for Vasquez had been issued in June 2014—about six months earlier—and that pursuant to usual practice that warrant had been published to the Clarkstown Police. But neither Detective Maloney's affidavit nor the Officers' statement of facts submitted that any of the Officers had actually been informed of the warrant, much less believed—even mistakenly in good faith—that this warrant was still outstanding. In fact, all their statement says about this warrant is that Vasquez had been arraigned on it in September 2014. In other words, the Officers aver both that the warrant was issued and that it was closed months before the Target incident. Because we must view all of the evidence in the light most favorable to Vasquez on summary judgment, we cannot selectively infer that the Officers knew about one fact (the issuance of the warrant) but not the other (the arraignment leading to its closure). Of course, we express no view on how the Fourth

judgment (here, Vasquez), the record discloses not even a mistaken recollection by any of the Officers that a warrant *did* exist—only a conjecture that one "might" exist. App'x 235.[7] The unconstitutionality of detaining Vasquez while waiting to confirm such speculation "follow[s] immediately" from half a century of Supreme Court precedent. *Wesby*, 138 S. Ct. at 590 (quoting *Anderson*, 483 U.S. at 641). Since *Terry*, it has been clearly established that when an officer can point to *no* facts at all to justify a hunch, the detention violates the Fourth Amendment.

The Officers suggest that our decision in *United States v. Santa*, 180 F.3d 20 (2d Cir. 1999), supports their claim to qualified immunity. But that precedent only highlights where their argument falters. In *Santa*, officers

---

Amendment or qualified immunity analysis might be resolved on a more fully developed record, or before a factfinder at trial.

[7] We do not question that police officers "may rely on probabilities in the reasonable suspicion context." *Glover*, 140 S. Ct. at 1190. And so we do not insist that police officers know to a certainty that an arrest warrant is pending. But a police officer's reasonable suspicion that there is an outstanding arrest warrant must be based on some articulable fact, not simply a hunch.

arrested the defendant based on an erroneous police computer record indicating that he was wanted on an outstanding warrant. *Id.* at 24. The warrant had in fact been vacated, but due to a clerical error by court employees, it was never removed from the police database. *Id.* at 22–23. Before arresting the defendant, the officers had requested a "wanted person check" from the dispatcher to determine whether there was an outstanding warrant. *Id*. at 24. The dispatcher checked the police database and separately confirmed with the originating department, which faxed a copy of the warrant to the requesting department, and radioed the information back to the officers—all based on incorrect information resulting from the clerical error. *Id*. Because the officers' reliance on the erroneous computer record was objectively reasonable and the error was attributable to court employees rather than improper police practices, we declined to suppress evidence found on the defendant's person pursuant to the exclusionary rule. *Id*. at 30.

*Santa* offers no safe harbor for the Officers. In that case, the officers articulated a specific fact—a computer record of an outstanding warrant which they first checked and confirmed—on which they reasonably relied, even though that record turned out to be erroneous. Here, by contrast, the Officers do not claim to have relied on *anything*, not even one officer's faulty memory of an outstanding warrant, in seizing and detaining Vasquez. Absent any articulation of a factual basis for a belief that a warrant existed, *Santa* offers their position no support.[8]

The Officers further contend that denying them qualified immunity amounts to a requirement that "police exhaust all available means of technology to determine whether an arrest warrant was open before

---

[8] We recognize that *Santa* involved application of the good-faith exception to the exclusionary rule for Fourth Amendment violations, whereas the present case involves a question precedent of whether there was a Fourth Amendment violation to begin with, and the independent question of whether reasonable officers would have recognized that their conduct violated clearly established law. To the extent that both cases concern the objective reasonableness of police conduct under Fourth Amendment standards, the analysis in *Santa* sheds some light on whether an officer's objectively reasonable reliance on information indicating the existence of a warrant might entitle him to qualified immunity. For the reasons explained in the text, however, the Officers have not offered any facts that would place their conduct in this category.

conducting a basic safety search." Defs.-Appellants Br. at 14. But the problem here is not so much that the police failed to *confirm* the existence of a warrant; it is that, taking the facts in the light most favorable to Vasquez, they did not even purport to have any basis for believing that there was a warrant outstanding for his arrest in the first place.

Nor are Officers Maloney, Caraballo, Dunne, LaTorre, and Callanan entitled to qualified immunity because they acted upon information supplied by Detective Cruz. "Plausible instructions from a superior or fellow officer support qualified immunity where, viewed objectively in light of the surrounding circumstances, they could lead a reasonable officer to conclude that the necessary legal justification for his actions exists." *Anthony v. City of New York*, 339 F.3d 129, 138 (2d Cir. 2003) (quoting *Bilida v. McCleod*, 211 F.3d 166, 174–75 (1st Cir. 2000)). Yet where an officer is clearly and unequivocally on notice that an individual's past encounters with police do not provide an adequate basis for stopping him, a superior's contrary instructions will not shield the arresting officer from liability. *See*

21

*Diamondstone v. Macaluso*, 148 F.3d 113, 117–18, 126 (2d Cir. 1998) (expressing "grave doubts" over officer's qualified immunity defense, which was based on him receiving advice from his superiors to continue stopping a driver who had failed to produce proof of insurance during prior stops).  While factual development at trial might shed further light on the individual Officers' levels of knowledge concerning the basis for detaining Vasquez, at this stage the record reveals only that Detective Cruz advised Detective Maloney that "he believed that there might be a judicially issued Warrant for [Vasquez's] arrest."  App'x 235.  Maloney's affidavit thus claims that the Officers were conveyed nothing more than guesswork, and it does not assert that the Officers did anything to corroborate that guess before seizing Vasquez.  On this record, the Officers are therefore not entitled to qualified immunity for detaining Vasquez without a warrant or any facts

whatsoever that might have given rise to reasonable suspicion that such a warrant existed, in violation of his clearly established constitutional rights.[9]

Having concluded that, on this record, a reasonable officer would have known that the *Terry* stop of Vasquez was not permitted under clearly established law, the same conclusion necessarily applies to the frisk. *See Terry*, 392 U.S. at 29–30 (permitting a frisk only during a justified investigative stop). In any event, a frisk is allowed only "when police have a reasonable belief that the suspect poses a danger," in particular, that "the suspect may gain immediate control of weapons." *Michigan v. Long*, 463 U.S.

---

[9] We do not question that police are "entitled to act on the strength of [a] radio bulletin" informing them of an existing warrant. *Whiteley v. Warden, Wyo. State Penitentiary*, 401 U.S. 560, 568 (1971); *see also id.* ("Certainly police officers called upon to aid other officers in executing arrest warrants are entitled to assume that the officers requesting aid offered the magistrate the information requisite to support an independent judicial assessment of probable cause."). Indeed, officers acting upon a superior officer's apparently valid order need not investigate the basis for the order and are entitled to the same qualified immunity as the superior. *See Varrone*, 123 F.3d at 81. But on this limited record, viewing the evidence in the light most favorable to Vasquez, we cannot assume that Detective Maloney communicated anything to the other officers before they stopped Vasquez other than Detective Cruz's hunch that a warrant might exist—not that a warrant did exist. As we have already explained, that basis was not sufficient to entitle any of the Officers to qualified immunity.

1032, 1049 (1983); *see also Bailey*, 743 F.3d at 332 ("To support an accompanying patdown, there must be a reasonable basis to think 'that the person stopped is armed and dangerous.'") (quoting *Arizona v. Johnson*, 555 U.S. 323, 326–27 (2009)). Here, the undisputed facts offer no basis for a belief that Vasquez posed a danger to anyone as is required to justify a frisk for weapons.[10] Indeed, the Officers' memories are so hazy that "none of the[m] . . . can recall who performed th[e] pat down," let alone its purported rationale. App'x 235.

On this record, there is no evidence Vasquez was doing anything other than simply walking out of a store and, as we have already concluded, there was no basis whatsoever for believing he was wanted for any crime.

## III.   CONCLUSION

In sum, we hold that it was clearly established law in January 2015 that an officer's unconfirmed hunch that an arrest warrant might possibly

---

[10] The parties moreover appear to agree that the officers detaining Vasquez went beyond conducting a routine pat down by removing his wallet from his pocket.

24

exist, coupled with nothing more than the officer's recognition of a suspect from prior arrests, does not constitute reasonable suspicion justifying a *Terry* stop or frisk. Accordingly, at this stage and on the limited factual record before us, the Officers are not entitled to qualified immunity for their detention and frisk of Vasquez.

We therefore **AFFIRM** the order of the district court denying summary judgment to the defendants on Vasquez's Fourth Amendment claims.