21-836 (L)
*United States v. Hawkins*

# In the
# United States Court of Appeals
## FOR THE SECOND CIRCUIT

AUGUST TERM 2021
Nos. 21-836 (L), 21-848 (Con)

**UNITED STATES OF AMERICA,**
*Appellee*,

v.

**MICHAEL HAWKINS, CAESAR DIAZ, A/K/A SEALED DEFENDANT 1,**
*Defendants-Appellants*.

On Appeal from the United States District Court
for the Southern District of New York

ARGUED: APRIL 11, 2022
DECIDED: JUNE 23, 2022

Before:     KEARSE, SACK, and MENASHI, *Circuit Judges*.

Defendants Michael Hawkins and Caesar Diaz each pleaded guilty to one count of being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 2, but reserved the right to appeal the district court's denial of their joint suppression motion, which sought to exclude evidence including a firearm that police

recovered from Diaz incident to a *Terry* stop. Hawkins and Diaz argue that the police lacked reasonable suspicion to initiate the stops that resulted in the recovery of the firearm. We disagree that the police lacked reasonable suspicion to effectuate the stops and probable cause to arrest Hawkins, and we affirm the judgments of the district court.

MICAH F. FERGENSON, Assistant United States Attorney (Danielle R. Sassoon, Assistant United States Attorney, *on the brief*), *for* Damian Williams, United States Attorney for the Southern District of New York, New York, NY, *for Appellee*.

ALLEGRA GLASHAUSSER, Federal Defenders of New York, New York, NY (David A. Ruhnke, Ruhnke & Barrett, Montclair, NJ, *on the brief*), *for Defendants-Appellants*.

PER CURIAM:

Defendants Michael Hawkins and Caesar Diaz appeal the judgments of the district court (Kaplan, J.) regarding their convictions for being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 2. Each defendant pleaded guilty to that charge on the condition that he reserved his right to appeal the district court's denial of the joint motion to suppress evidence. That motion sought to exclude the firearm that police found on Diaz after the defendants were stopped and searched. Hawkins and Diaz argue that the police lacked reasonable suspicion to initiate the stops and to conduct the searches and also lacked probable cause to arrest Hawkins. We disagree. Reasonable suspicion supported the initial stops, and the

2

subsequent searches and arrests of the defendants were likewise lawful. The judgments of the district court are therefore affirmed.

## BACKGROUND

On October 20, 2019, at approximately 8:51 p.m., officers of the New York City Police Department received a ShotSpotter report of a gunshot fired from the roof level of a building on Reverend James A. Polite Avenue in the Bronx. Officers Stephen Bonczyk and Cynthia Lopez were the first to respond and arrived on the scene within approximately two minutes of receipt of the report. As Officers Bonczyk and Lopez exited their marked police vehicle, they observed Hawkins and Diaz exit a six-story residential building in the vicinity of where shots were reportedly fired and enter the outdoor vestibule separating the building from the sidewalk. The officers testified that, upon seeing Hawkins and Diaz, their "first priority was to get to the gate and make sure they cannot leave so [the officers] could talk to them and further investigate the shots fired activation." App'x 54; *see* App'x 107-08. While approaching the location where they would ultimately meet the defendants (at or just inside the fenced-in vestibule's gateway), the officers made two observations. First, the officers observed Diaz "turn[] his body slightly," App'x 34, and Hawkins "slightly pivot" as he exited the building, App'x 82, and "hurry[]" through the vestibule, App'x 33. Second, Officer Bonczyk noticed that the defendants had their hands in their pockets and that Diaz's hands created a "tension in his pockets and he was pulling his sweatshirt down below the center waistline." App'x 37.

Officer Bonczyk asked the defendants to remove their hands from their pockets, which they did. Officer Bonczyk noticed that, when Diaz removed his hands from his pockets, there was, in his

3

description, a "bulge" below the middle of Diaz's waistband. App'x 40-41. Officer Bonczyk then asked for consent to search the defendants, which was declined. At this point, additional officers arrived on the scene, and Hawkins and Diaz were separated for questioning. While the defendants were being questioned, officers spoke with a witness who had been walking his dog. The witness said that he saw the defendants "coming down from the rooftop." App'x 123.

Officer Bonczyk frisked Diaz and recovered a plastic bag from the lower front waistline of Diaz's pants. In the plastic bag was an unloaded firearm. Around this time, officers recovered one spent casing from the rooftop. Both defendants were arrested. Hawkins was frisked pursuant to his arrest, but no weapons were recovered from his person at that time.[1]

The defendants were each charged with one count of being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 2. The defendants moved to suppress certain evidence, including Diaz's recovered firearm, arguing that the officers lacked reasonable suspicion to stop and frisk the defendants and that they lacked probable cause to arrest Hawkins. The district court denied the motion, and the defendants pleaded guilty on the condition that they reserved their right to appeal the denial of the joint suppression motion. The defendants bring that challenge now.

---

[1] When Hawkins was searched again at the precinct, officers recovered a firearm from his person, and ballistics testing confirmed that the spent shell casing found on the rooftop matched the firearm found on Hawkins.

4

## LEGAL STANDARDS

When considering the denial of a motion to suppress, "[w]e review for clear error findings of fact" while "giving special deference to findings that are based on determinations of witness credibility." *United States v. Lucky*, 569 F.3d 101, 106 (2d Cir. 2009). In contrast, "[w]hether a seizure occurred is a question of law to be reviewed *de novo*," *Brown v. City of Oneonta*, 221 F.3d 329, 340 (2d Cir. 2000), and we review *de novo* other "legal conclusions and mixed questions of law and fact, such as … whether there was reasonable suspicion to justify a *Terry* stop" or whether the defendants' Fourth Amendment rights were otherwise violated, *Lucky*, 569 F.3d at 105-06.

To conduct a *Terry* stop—that is, a temporary detention of an individual—a police officer must have "reasonable suspicion" that the individual has engaged in or is about to engage in criminal activity. *United States v. Tehrani*, 49 F.3d 54, 58 (2d Cir. 1995). Reasonable suspicion is less than probable cause, *Terry v. Ohio*, 392 U.S. 1, 27 (1968), and must be established by "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the intrusion," *United States v. Padilla*, 548 F.3d 179, 187 (2d Cir. 2008) (alteration omitted) (quoting *Terry*, 392 U.S. at 21). "[A]n inchoate and unparticularized suspicion or hunch" cannot support reasonable suspicion, although an officer is permitted to "draw on his own experience and specialized training to make inferences from and deductions about the cumulative information available to him that might well elude an untrained person." *Id.* (internal quotation marks and alterations omitted). "[C]ontextual considerations," such as "the fact that the stop occurred in a 'high crime area,'" factor into a reasonable-suspicion analysis, and the officers' assessment of an individual's "nervous" or "evasive

5

behavior" is "pertinent" in establishing reasonable suspicion. *Illinois v. Wardlow*, 528 U.S. 119, 124 (2000). In deciding whether reasonable suspicion existed at the time of the intrusion, we consider the totality of the circumstances. *See Navarette v. California*, 572 U.S. 393, 397 (2014).

While a *Terry* stop requires only reasonable suspicion, an arrest requires the heightened standard of probable cause. "Probable cause to arrest a person exists if the law enforcement official, on the basis of the totality of the circumstances, has sufficient knowledge or reasonably trustworthy information to justify a person of reasonable caution in believing that an offense has been or is being committed by the person to be arrested." *United States v. Patrick*, 899 F.2d 169, 171 (2d Cir. 1990) (citing *Brinegar v. United States*, 338 U.S. 160, 175-76 (1949)). Probable cause is satisfied by "the kind of fair probability on which reasonable and prudent people ... act." *Florida v. Harris*, 568 U.S. 237, 244 (2013) (internal quotation marks and alteration omitted).

## DISCUSSION

The district court did not err by holding that reasonable suspicion existed at the time the first responding officers initially detained the defendants. At the point of initial detention when they met the defendants at the vestibule gate, the officers had received a report of a shot fired from a rooftop in the immediate vicinity of a high-crime area familiar to the officers,[2] and they suspected that a

---

[2] The defendants argue that the technology which relayed the shot-fired report to the NYPD, called ShotSpotter, is unreliable. But the responding officers testified that the technology works with a reasonably high degree of accuracy. For example, Officer Lopez testified that ShotSpotter reports, in her experience, were "usually" accurate to the "block." App'x 78. Lopez

shot may have been fired from the rooftop of the building the defendants exited. The officers also observed the defendants exiting the building at around the time it would have taken to descend the six flights of stairs from the rooftop of the building. The officers observed that both defendants exhibited body movements they perceived to be evasive,[3] and Officer Bonczyk made the "very significant" observation that the defendants had their hands in their sweatshirt pockets and that doing so created tension at Diaz's waistline. These "specific and articulable facts" and the corresponding "rational inferences" that the defendants may have been involved with the reported shooting "reasonably warrant[ed]" the initial stop. *Padilla*, 548 F.3d at 187.

Nor did the district court err in finding that the officers had reasonable suspicion to frisk Diaz. In addition to the facts supporting the initial stop, Officer Bonczyk observed a "bulge" around Diaz's center waistline when Diaz removed his hands from his sweatshirt

---

testified that the reports were even more accurate "with respect to elevation." *Id.* The district court did not err in crediting the officers' reasonable reliance on the ShotSpotter report in supporting the reasonable-suspicion or probable-cause determinations.

[3] The defendants challenge the district court's reliance on the defendant's body movements, based primarily on partial surveillance video and what they argue is contradictory testimony elicited from Officer Lopez. We owe the district court "special deference to findings that," as here, "are based on determinations of witness credibility," *Lucky*, 569 F.3d at 106, and we cannot say the district court erred in its decision to credit the officers' testimony about the defendants' movements.

pockets.[4] Before frisking Diaz, Officer Bonczyk had also learned from a fellow officer that an eyewitness had "heard a gunshot" and identified the defendants as having "com[e] down from the rooftop." App'x 123. Given these additional developments, Officer Bonczyk martialed sufficient "specific and articulable facts" to "warrant" frisking Diaz. *Padilla*, 548 F.3d at 187.

Finally, the officers had probable cause to arrest Hawkins. In addition to the facts that supported reasonable suspicion to stop the defendants and to frisk Diaz, at the time of Hawkins's arrest, the officers had recovered from Diaz's waist a firearm wrapped in a plastic bag. Officers had also recovered a spent shell casing from the rooftop. Accordingly, the officers reasonably assessed that, contrary to his argument on appeal, Hawkins was not a mere bystander to whom they could not attribute "individualized" probable cause. To the contrary, Hawkins admitted that he had accompanied Diaz in the building, and the officers thought that he exhibited evasive behavior. Meanwhile, a firearm was found on Diaz, a shell casing had been found on the rooftop, and an eyewitness told officers that he had heard a gunshot and saw Hawkins descend from the rooftop with Diaz. Given these circumstances, the district court did not err in determining that officers had probable cause to arrest Hawkins on suspicion that he and Diaz committed the shooting together.

---

[4] The district court's analysis suggests that it believed the initial stop did not begin until after Officer Bonczyk observed the "concealment of a bulge" around Diaz's center waistline. Even if the initial stop began at an earlier point, it was adequately supported based on the reasonable suspicion detailed above.

## CONCLUSION

The district court did not err in declining to suppress the firearm recovered from Caesar Diaz during the course of an interaction in which police lawfully detained, searched, and arrested the defendants. We affirm the judgments of conviction for Michael Hawkins and Caesar Diaz.